[No. B191812. Second Dist., Div. Four. July 23, 2007.]

ADVANTEC GROUP, INC., Plaintiff, Cross-defendant and Respondent, v. EDWIN'S PLUMBING CO., INC., Defendant, Cross-complainant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

___

\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part III. of the Discussion.

624

**COUNSEL**

Law Office of Henry E. Guzman and Henry E. Guzman for Defendant, Cross-complainant and Appellant.

Howard Goodman for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**WILLHITE, Acting P. J.—**

## INTRODUCTION

When a contractor sues to recover compensation for work requiring a contractor's license, Business and Professions Code section 7031 requires the contractor to allege that he or she "was a duly licensed contractor at all times during the performance of that act or contract." (§ 7031, subd. (a).)[1] If the issue of licensure is "controverted" by the defendant, then the contractor must prove licensure by producing a verified certificate from the Contractors' State License Board. (§ 7031, subd. (d).) In this case, we hold that a defendant's answer containing a general denial of the material allegations of the contractor's claim (Code Civ. Proc., § 431.30, subd. (b)(1)) is sufficient to "controvert" the contractor's allegation of licensure, and thus invokes the requirement of section 7031, subdivision (d), that the contractor prove licensure by producing a verified certificate.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant and cross-complainant Edwin's Plumbing Co., Inc. (Edwin's), appeals from a judgment entered after the trial court granted a motion for

---

[1] All further references to section 7031 are to the Business and Professions Code.

nonsuit on Edwin's cross-complaint in favor of plaintiff and cross-defendant Advantec Group, Inc. (Advantec).

Advantec was the developer of a multiunit apartment building. It hired Edwin's to furnish plumbing services and materials, pursuant to a subcontract dated December 29, 2003. Edwin's worked on the project from February 2004 until November 2004, when Advantec terminated Edwin's from the project, prior to its completion.

In January 2005, Advantec filed an action for breach of contract against Edwin's.[2] The complaint sought damages of $168,476.40, plus attorney fees. Edwin's filed an answer to the complaint in March 2005.

In January 2006, Edwin's filed a cross-complaint alleging, inter alia, breach of contract by Advantec.[3] Edwin's alleged that it "is a licensed plumbing contractor, performing work under the laws of the state of California."

Advantec filed an answer to the cross-complaint, in which it denied "each and every allegation" of the cross-complaint, pursuant to Code of Civil Procedure section 431.30. The answer did not include a specific challenge to Edwin's licensure status.

In March 2006, the matter was tried by a jury. When Shagen Galstanyan (the majority shareholder of Edwin's) began testifying and was asked whether he is a licensed plumber, Advantec objected, pursuant to section 7031, that Edwin's licensure had to be proved by way of a verified certificate. The court tentatively sustained the objection, but allowed the testimony to continue, subject to revisiting the issue later.

During the subsequent discussion, the court stated it planned to preclude Edwin's from introducing evidence regarding its licensure other than that which is required by section 7031—a verified certificate of licensure from the Contractors' State License Board. Counsel for Edwin's requested a continuance to permit her to acquire the verified certificate from the state licensing board. Advantec's counsel represented to the court that acquiring the certificate would take at least two weeks. The court declined to continue the case, but agreed to hear further argument the following day.

---

[2] Advantec's complaint also included a second cause of action on the license bond against Surety Company of the Pacific, Edwin's surety. The action against the surety company was dismissed after trial.

[3] The cross complaint also alleged claims of fraud and breach of the covenant of good faith and fair dealing, and named a second cross-defendant, George Saadian. Before trial, Edwin's dismissed the entire case against Saadian, and dismissed the claims for fraud and breach of the covenant of good faith and fair dealing against Advantec, leaving only the breach of contract claim against Advantec.

Counsel for Edwin's subsequently argued that the issue of its licensure constituted "new matter" pursuant to Code of Civil Procedure section 431.30 and, as such, was required to be pleaded as an affirmative defense in Advantec's answer. Because it was not raised in that manner, counsel argued, the defense was waived. After Edwin's rested its case, the trial court, outside of the presence of the jury, discussed the matter with counsel further, and ultimately granted Advantec's motion for a nonsuit on the cross-complaint based on the failure by Edwin's to produce proof of licensure. The jury returned a verdict in favor of Advantec for $46,200, and this appeal from the judgment follows.

## DISCUSSION

### I. Section 7031

Edwin's contends that the trial court erred in concluding that Advantec's general denial in its answer to the cross-complaint controverted the issue of Edwin's licensure, such that Edwin's was required to prove licensure "by production of a verified certificate of licensure from the Contractors' State License Board." (§ 7031, subd. (d).) We conclude that the trial court was correct.

Section 7031, subdivision (a), provides in relevant part: "Except as provided in subdivision (e) [which sets forth limited circumstances, not applicable here, under which substantial compliance may be established], no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter *without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract, regardless of the merits of the cause of action brought by the person.*" (Italics added.) Under subdivision (d) of section 7031, "[i]f licensure or proper licensure is controverted, then proof of licensure pursuant to this section shall be made by production of a verified certificate of licensure from the Contractors' State License Board which establishes that the individual or entity bringing the action was duly licensed in the proper classification of contractors at all times during the performance of any act or contract covered by the action. Nothing in this subdivision shall require any person or entity controverting licensure or proper licensure to produce a verified certificate. When licensure or proper licensure is controverted, the burden of proof to establish licensure or proper licensure shall be on the licensee."

Read together, subdivisions (a) and (d) of section 7031 provide that the contractor must plead licensure, and, if licensure is "controverted," must

also prove licensure by producing a verified certificate. The issue here is whether an answer that makes a general denial is sufficient to "controvert" the pleading of licensure, such that, under subdivision (d), the contractor must produce a certificate of licensure. We conclude that it is.

■ An answer may contain a "general . . . denial of the material allegations of the complaint controverted by the defendant." (Code Civ. Proc., § 431.30, subd. (b)(1).)[4] The effect of a general denial is to "put in issue the material allegations of the complaint." (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 383 [282 Cal.Rptr. 508].) Code of Civil Procedure section 431.10, subdivision (a) defines a "material allegation in a pleading" as "one essential to the claim or defense and which could not be stricken from the pleading without leaving it insufficient as to that claim or defense." Because section 7031, subdivision (a), requires the pleading of licensure (without it, the contractor cannot recover, regardless of the merits of the claim), the allegation of licensure is a "material" allegation subject to being controverted by a general denial. Therefore, faced with an answer that makes a general denial, the contractor is required by section 7031, subdivision (d), to prove the allegation of licensure, and can do so only by producing a verified certificate.

■ Edwin's contends that nonlicensure constitutes "new matter" under section 431.30, subdivision (b)(2), which provides that an answer must contain "[a] statement of any new matter constituting a defense," in other words, an affirmative defense. Thus, according to Edwin's, the failure to plead nonlicensure as an affirmative defense, or to raise it as an objection in abatement regarding Edwin's capacity to sue, precluded Advantec from raising the issue at trial. However, "[g]enerally, a party must raise an issue as an affirmative defense where the matter is not responsive to essential allegations of the complaint." (*Bevill v. Zoura* (1994) 27 Cal.App.4th 694, 698 [32 Cal.Rptr.2d 635].) Nonlicensure *is* responsive to an essential allegation of the complaint, and therefore does not constitute "new matter." ■ "Under a general denial, the defendant may urge any defense tending to show that the plaintiff has no right to recover or no right to recover to the extent that he or she claims. [Fn. omitted.]" (49A Cal.Jur.3d (2002) Pleading, § 186, citing in fn. 3 *Aetna Carpet Co. v. Penzner* (1951) 102 Cal.App.2d 859, 860 [228 P.2d 347].) Edwin's argument ignores the plain language of section 431.30, subdivision (b)(1), under which the material allegations of a complaint may be "controverted" by a general denial, and the plain language of section 7031,

---

[4] All further references to section 431.30 are to the Code of Civil Procedure. Section 431.30, subdivision (b) provides: "The answer to a complaint shall contain: [¶] (1) The general or specific denial of the material allegations of the complaint controverted by the defendant. [¶] (2) A statement of any new matter constituting a defense."

subdivision (d), which provides that once the allegation of licensure is "controverted," the contractor has the burden of proving licensure by producing a valid certificate.

■ Similarly, Edwin's contends that a contractor's licensure status involves its capacity to sue, and an objection as to a party's capacity to sue constitutes "new matter" that must be raised as a plea in abatement, and must be specifically pleaded. Edwin's cites, for example, *Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599, 1604 [52 Cal.Rptr.2d 443], in which the court stated that a plea in abatement such as lack of capacity to sue " '. . . is a technical objection and must be pleaded specifically. Thus an affirmative defense or demurrer which contains a general assertion that plaintiff has not stated a cause of action does not suffice to raise a plea in abatement. [Citations.]' " However, as stated in another case relied upon by Edwin's, "Unless the governing statute states otherwise, a complaint need not allege the plaintiff's capacity to sue. If lack of capacity does not appear on the face of the complaint, it cannot be raised by demurrer, but is a special plea in abatement. [Citations.]" (*Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 994, fn. 4 [277 Cal.Rptr. 517, 803 P.2d 370].) Thus, the court in *Hydrotech* recognized that some statutes require that a complaint include an allegation of capacity to sue, and distinguished such situations from the ordinary one in which capacity to sue is not alleged in the complaint. As noted, section 7031 is one such statute that requires inclusion of an allegation of the plaintiff's capacity to sue.[5] Capacity to sue having been alleged in the complaint, a refutation of that capacity does not introduce new matter, and need not be specifically pleaded as an objection in abatement. A general denial is sufficient to controvert an allegation of licensure pursuant to section 7031.

■ The cases upon which Edwin's relies on appeal do not suggest that nonlicensure must be raised by way of an affirmative defense. In *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412 [30 Cal.Rptr.3d 755, 115 P.3d 41] (*MW Erectors*), Niederhauser had entered into a subcontract with a general contractor to provide metal work for a large construction project. Niederhauser in turn subcontracted with MW Erectors (MW) to perform a portion of the metal work. Niederhauser later sued

---

[5] In contrast, the analysis in *Color-Vue* and *Hydrotech* upon which Edwin's relies involved the capacity of a suspended corporation to maintain or defend an action. "A plaintiff corporation need not allege that it has qualified to do business in California or that it has paid all of its state taxes." (*Color-Vue, Inc. v. Adbrams, supra,* 44 Cal.App.4th at p. 1605 [suspension of corporate powers of foreign corporation for failure to hold a valid certificate to transact business in California (see Corp. Code, §§ 2105, 2203)]; see *Hydrotech Systems, Ltd. v. Oasis Waterpark, supra,* 52 Cal.3d at p. 994, fn. 4 [suspension of corporate powers for failure to pay taxes (see Rev. & Tax Code, § 23301); licensure under section 7031 also involved in case, but not in context under discussion here].)

the general contractor and the project owner for amounts due, and that matter settled. MW then sued Niederhauser for amounts allegedly due on its subcontract. Niederhauser moved for summary judgment on the basis that MW's claims were barred by section 7031 because MW was not properly licensed. In response, MW asserted that Niederhauser was judicially estopped from making that claim because it had implicitly represented in the related action against the owner and general contractor that MW was properly licensed. (36 Cal.4th at pp. 419–420.) The Supreme Court rejected that argument (*id.* at pp. 421–425), based in part on the conclusion that section 7031 did not require Niederhauser to allege, in its complaint against the owner and general contractor, the licensure status of its subcontractors. (36 Cal.4th at p. 424, fn. 5.) In doing so, the Supreme Court noted that the owner and general contractor "were free to assert the matter [of MW's nonlicensure] as an affirmative defense to Niederhauser's claims." (*Id.* at p. 424.) It also commented that section 7031 "contemplates that nonlicensure must be raised as a defense," but found that "no statutory provision explicitly requires a duly licensed contractor who is suing for money attributable to the work *of another entity* to affirmatively allege that *the other entity* was duly licensed." (36 Cal.4th at p. 424, fn. 5.)

Thus, *MW Erectors* is inapposite to the issue presented here. The Supreme Court merely pointed out that the owner and general contractor could have asserted MW's nonlicensure "as an affirmative defense" in the action brought against them by Niederhauser, in which MW's licensure status *was not alleged in the complaint, and was not required to be.* Furthermore, the Supreme Court's statement that section 7031 "contemplates that nonlicensure must be raised as a defense" (*MW Erectors, supra,* 36 Cal.4th at p. 424, fn. 5), cannot be construed as a holding, or even a suggestion, that a general denial to a complaint is insufficient to controvert the required allegation in the complaint that the plaintiff is a licensed contractor. A general denial controverts, i.e., raises a defense to, all material allegations in the complaint.

In *Walker v. Nitzberg* (1970) 13 Cal.App.3d 359 [91 Cal.Rptr. 526], Walker was the assignee of sums due on a residential building contract. Walker sued the homeowner to recover money paid to the contractor by the homeowner after the homeowner had received notice of the assignment. In concluding that Walker could not recover from the homeowner because the contractor was unlicensed, the Court of Appeal noted that the homeowner "did affirmatively allege in his answer . . . that Walker's assignor . . . was not a duly licensed contractor and thus tendered in issue the disability which attached to the contract between [the homeowner] and [the contractor]." (*Id.* at p. 368.) Walker had not alleged in his complaint that the assignor/contractor was

licensed, nor "that he was a holder in due course or that he took the assignment in good faith without knowledge of the infirmity which attached to the contract assigned." (*Ibid.*) Thus, here again the case relied upon by Edwin's did not decide or even address the issue presented in the case before us, because the plaintiff was not obligated to plead licensure and did not do so, and therefore the issue was raised as an affirmative defense in the defendant's answer. The fact that nonlicensure was raised as an affirmative defense in a different context in no way dictates that nonlicensure *must* be raised as an affirmative defense in all cases.

## II

Edwin's next contends that even if the issue of nonlicensure was properly raised by a general denial, the trial court abused its discretion in denying its request for a continuance to permit it to obtain the required verified certificate from the state licensing board. We disagree.

"Generally, the power to determine when a continuance should be granted is within the discretion of the trial court. (*Lucas v. George T. R. Murai Farms, Inc.* (1993) 15 Cal.App.4th 1578, 1586 [19 Cal.Rptr.2d 436].) 'A trial court's exercise of discretion will be upheld if it is based on a "reasoned judgment" and complies with the ". . . legal principles and policies appropriate to the particular matter at issue." ' (*Bullis v. Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 815 [148 Cal.Rptr. 22, 582 P.2d 109].)" (*Color-Vue, Inc. v. Abrams, supra*, 44 Cal.App.4th at p. 1603.)

■ Here, the legal principles and policies involved militate in favor of the trial court's decision to deny the continuance. As stated in *MW Erectors, supra*, 36 Cal.4th at page 423: "Section 7031(a) expressly provides that, 'regardless of the merits,' one may not 'bring or maintain *any action,* or recover in law *or equity* in any action, . . . for the collection of compensation for the performance of any act or contract where a license is required . . . without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract.' (Italics added.) If the defendant then 'controvert[s]' the plaintiff's proper licensure, *the plaintiff must prove it by producing verified certificates* establishing that he or she held all necessary licenses during performance of the work. (§ [7031], subd. (d).) [¶] 'Because of the strength and clarity of this policy' (*Hydrotech Systems, Ltd. v. Oasis Waterpark*[, *supra,*] 52 Cal.3d 988, 995 . . . (*Hydrotech*)), the bar of section 7031(a) applies '[r]egardless of the equities.' (*Hydrotech, supra,* at p. 997.) Indeed, it has long been settled that 'the courts may not resort to

equitable considerations in defiance of section 7031.' (*Lewis & Queen v. N. M. Ball Sons* (1957) 48 Cal.2d 141, 152 [308 P.2d 713] (*Lewis & Queen*).) ' "Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business *outweighs any harshness between the parties,* and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of this state. [Citation.] . . ." ' (*Hydrotech, supra,* at p. 995, quoting *Lewis & Queen, supra,* at p. 151, italics in *Hydrotech.*)" (Third italics added.)

Thus, the strong, clear policy of the law placed the burden squarely on Edwin's as to proof of its licensure. Although we announce for the first time in this case the rule that a general denial sufficiently controverts an allegation of licensure, when read together the statutes at issue (§§ 7031 and 431.30) plainly dictate this result. Edwin's could have had available for trial a verified certificate of its licensure, or could have clarified by way of contention interrogatories whether Advantec intended to contest the validity of its license, but it did neither.[6] It is not accurate to say, as does Edwin's, that Advantec did not raise the issue until midtrial; as we have held, Advantec's general denial placed the issue in controversy. Nor can Advantec's conduct be described as sandbagging, where the clear weight of the statutory burden fell on Edwin's to prove its licensure.

Further, when Edwin's requested a continuance, the trial had already consumed four days, and was nearing completion. A continuance to permit Edwin's to obtain a verified certificate might well have resulted in a mistrial. Under these circumstances, the trial court was not required to delay the case for Edwin's to obtain the verified certificate it should have obtained before the trial began. The trial court did not abuse its discretion in denying a continuance.

**III***

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[6] The cross-complaint was filed in mid-January, and trial commenced in early March. There is no support in the record for the contention made by Edwin's in its appellant's reply brief that there was no time for it to obtain a verified certificate after filing its cross-complaint, nor is there support for the argument made by trial counsel that the cross-complaint was filed on the very eve of trial. Even were it so, Edwin's could have sought a brief continuance before trial commenced for the purpose of propounding contention interrogatories. It did not, nor did it object to the trial date.

*See footnote *ante,* page 621.

## DISPOSITION

The judgment is affirmed.

Manella, J., and Suzukawa, J., concurred.