Filed 6/16/16  Ground Service Technology v. Triton Structural Concrete CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| GROUND SERVICE TECHNOLOGY, INC., | D067349 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2013-00046810-CU-BC-CTL) |
| TRITON STRUCTURAL CONCRETE, INC., et. al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Reversed.

Finch, Thornton & Baird and Louis J. Blum for Defendants and Appellants.

Teeple Hall, Grant G. Teeple and Frederick M. Reich for Plaintiff and Respondent.

Defendants Triton Structural Concrete, Inc. (Triton) and Safeco Insurance Company of America (Safeco, together defendants) appeal from a judgment following a bench trial on plaintiff, Ground Service Technology, Inc.'s (GST), complaint. Defendants contend the judgment must be reversed because GST was not properly

licensed.  They also contend Triton did not breach the contract when it withheld payment to GST because (1) the Labor Code and applicable regulations required Triton to withhold all payment, and (2) there is no evidence showing Triton was paid for GST's work.  We conclude defendants forfeited their first argument by failing to object at trial to the testimony regarding GST licensure status.  We are persuaded by defendants' remaining arguments and reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Triton contracted with the San Diego Unified School District (the District) to build a new stadium at a high school campus (the project).  Safeco was Triton's payment bond surety for the project.  Triton subcontracted with GST to install erosion control improvements.  During work on the project, the District performed an ongoing labor compliance audit to ensure Triton and its subcontractors met prevailing wage reporting and payment requirements.  Through its audits, the District determined that GST's labor compliance records were not adequate and withheld payment from Triton.  In turn, Triton withheld payment from GST.

GST sued Triton for breach of contract, alleging Triton owed GST about $80,371 for work GST completed under the subcontract.  GST also claimed it was entitled to a penalty of two percent per month on all improperly withheld amounts.  Before trial, Triton paid GST the sum of $73,012.90.  The parties stipulated that Triton owed GST nothing more under the contract, with GST reserving its claim for interest, prompt payment penalties, and costs of suit including attorney's fees.

2

The matter proceeded to trial on the following four stipulated legal issues: (1) did Triton violate Business and Professions Code section 7108.5[1] by failing to timely remit to GST its portion of progress payments received from the District; (2) whether Safeco is liable to GST for any prompt payment violations by Triton; (3) whether Safeco is liable to GST for interest, attorney's fees and costs incurred in this action to recover subcontract funds on the labor and materials bond written by Safeco for the project; (4) whether Triton's withholding of funds was in good faith; and (5) whether Triton is entitled to offset money otherwise owed to GST, based on GST's alleged breach of indemnity provisions in the subcontract relating to the labor audit investigations.

The trial court issued an intended statement of decision. After considering and overruling defendants' objections, the trial court issued a statement of decision finding in favor of GST on the first three issues and concluded Triton did not act in good faith in withholding the funds and was not entitled to an offset. It found that, as of the date of GST's lawsuit, Triton had unreasonably withheld, at a minimum, the amount of $7,426.16.

The trial court later entered a judgment in favor of GST. It awarded GST: (1) prompt payment penalties in the sum of $3,023.65, representing, two percent of the amount of $7,426.16 for every month that payment was not made through GST's receipt of payment of $73,012.90 on May 2, 2014; (2) statutory prejudgment interest in the sum of $1,336.71, representing ten percent annual interest on the amount of $7,426.16 through

---

[1] Undesignated statutory references are to the Business and Professions Code.

GST's receipt of payment of $73,012.90 on May 2, 2014; and (3) attorney's fees and costs pursuant to a noticed motion. Defendants timely appealed.

## DISCUSSION

### I. *GST's Licensure Status*

Triton contends the judgment in favor of GST must be reversed because its general denial to GST's complaint controverted whether GST was properly licensed, but GST never offered a verified certificate of licensure, as required under section 7031, to prove it was properly licensed. GST argues the parties stipulated to the issues at trial and its licensure status was not contested. GST asserts Triton forfeited the issue by waiting to raise it until closing argument. We agree with GST.

"Subdivision (a) of section 7031 operates to deny access to the courts to contractors who were not licensed at all times during their performance." (*Womack v. Lovell* (2015) 237 Cal.App.4th 772, 780.) "Less well known is subdivision (d) of section 7031, which requires production of a verified certificate of licensure when the issue of licensure is controverted, and so can operate to deny even *licensed contractors* any compensation." (*Ibid.*) A general denial in an answer controverts an allegation of licensed status, which requires the contractor to produce a verified copy of the license at trial. (*Advantec Group, Inc. v. Edwin's Plumbing Co., Inc.* (2007) 153 Cal.App.4th 621, 624 [citing § 7031, subd. (d)] (*Advantec*).)

Here, GST's complaint alleged it was a licensed contractor. Defendants generally denied this allegation. These pleadings put GST's licensure status at issue and required GST to produce a verified certificate of licensure at trial. (§ 7031, subd. (d); *Advantec*,

4

*supra*, 153 Cal.App.4th at p. 624.)  The parties' joint trial readiness report listed the legal issues that were in dispute and not in dispute.  The parties also stipulated to certain facts not in dispute; GST's licensure status is not listed as an undisputed fact.  The trial court's statement of decision, also noted that the parties stipulated to the issues at trial, but GST's licensure status was not one of the issues listed.  At trial, however, GST's president testified, without objection, that GST holds A, B, C-10 and C-27 licenses.

Defendants raised the issue of GST's licensure status for the first time during closing argument.  In response, GST contended the trial readiness report did not list this as a disputed legal or factual issue.  GST suggested reopening the evidence so it could submit its certified license history.  The trial court stated this was not necessary as it was satisfied that GST had met its burden of proof on the issue.  In its objections to the intended statement of decision, Triton requested that the court make a finding of fact as to whether GST was properly licensed.  At a hearing on the objections, the trial court stated the objections were not "well taken" and it was not inclined to make additional factual findings.  Triton's counsel did not reargue the matter and the court overruled Triton's objections.

The principle of forfeiture generally applies in all proceedings, civil or criminal, even where a constitutional protection is involved; it is premised on the duty of parties to protect their rights, and it is designed to deter the gamesmanship of sitting on one's hands and raising a defect only after an adverse outcome.  (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264-265.)  We conclude defendants forfeited the issue by not objecting to the testimony of GST's president regarding GST's licensure.  *Advantec* is distinguishable.

5

In that case, the developer objected at trial to the contractor's proof of the license through the testimony of its holder. (*Advantec*, *supra*, 153 Cal.App.4th at p. 625.)

Additionally, defendants could have raised the defect by moving for a judgment in its favor at the close of GST's case-in-chief. (Code Civ. Proc., § 631.8.) Finally, during closing argument, when defendants first raised the defect, GST requested reopening the evidence to allow it to produce a verified certificate of licensure. The trial court declined the request, stating it was satisfied that GST had met its burden of proof on the issue. Defendants could have, but failed to object to the trial court's factual finding. Defendants had at least two opportunities to challenge the absence of proof in accordance with subdivision (d) of section 7031, but failed to do so. Defendants cannot stand mute on this issue at trial and expect to be rewarded on appeal.

II. *Breach of Contract and Penalties*

A. Relevant Authority

1. Prevailing Wage Statutes

Contractors and subcontractors on public works projects are required to pay a state-determined prevailing wage to all their workers. (Lab. Code, § 1771.) A prime contractor is jointly and severally liable for any prevailing wage amounts due from its subcontractors. (*Id*., § 1743, subd. (a).) The public agency awarding the contract for a public works project (the awarding body) may adopt a labor compliance program to ensure payment of prevailing wages. (Cal. Code Regs., tit. 8, § 16000 [defining

6

"awarding body" and "labor compliance program"].)[2]  The awarding body is allowed to withhold funds from a prime contractor should it determine that the contractor or one of its subcontractors has violated the prevailing wage law.  (Lab. Code, § 1727, subd. (a).)  If the violator is a subcontractor, the prime contractor is authorized to withhold an equivalent amount from its payments to the subcontractor.  (*Id*., § 1729.)

If a contractor learns that a subcontractor has failed to pay his or her workers the specified prevailing rate of wages, the contractor must take corrective action, including retaining sufficient funds due the subcontractor for work performed on the public works project.  (Lab. Code, § 1775, subd. (b)(3).)  Additionally, the awarding body must withhold contract payments when payroll records are delinquent or inadequate.  (*Id*., § 1771.5, subd. (b)(5).)  "Inadequate payroll records" include a record lacking any of the information required by Labor Code section 1776 or a record remaining uncorrected for one payroll period, after the labor compliance program has given the contractor or subcontractor notice of inaccuracies detected by audit or record review.  (Regulation 16435(d)(1) & (3).)  The awarding body can only withhold those payments due or estimated to be due to the contractor or subcontractor whose payroll records are delinquent or inadequate, plus any additional amount needed to cover a back wage and penalty assessment against the contractor or subcontractor whose payroll records are delinquent or inadequate.  (Regulation 16435(e).)  In turn, the contractor must "cease all payments to a subcontractor whose payroll records are delinquent or inadequate" until the

---

[2]     Undesignated references to "Regulations" are to title 8 of the California Code of Regulations.

7

labor compliance program provides notice that the subcontractor has cured the delinquency or deficiency.  (*Ibid.*)  No contract payments can be withheld solely on the basis of delinquent or inadequate payroll records after the required records have been produced.  (Regulation 16435(g).)

2.  Prompt Payment Statutes

Section 7108.5 and Public Contract Code section 7107 are part of California's "prompt payment" statutes.  (*Tesco Controls, Inc. v. Monterey Mechanical Co.* (2004) 124 Cal.App.4th 780, 800 (*Tesco*).)  These statutes provide that within seven days from the time a contractor receives a progress or retention payment, the contractor must pay its subcontractor the subcontractor's share of the progress or retention payment received. (§ 7108.5, subd. (a); Pub. Contract Code, § 7107, subd. (d).)[3]  If the general contractor fails to timely pay, the subcontractor may recover its attorney's fees and costs and a penalty in the amount of two percent of the amount due per month for every month the payment is not made.  (§ 7108.5, subds. (b) & (c); Pub. Contract Code, § 7107, subd. (f).) In the event there is a "good faith" or "bona fide" dispute over the amount due on a progress or retention payment from the prime contractor to a subcontractor, both statutes authorize the contractor to withhold up to 150 percent of the disputed amount.  (§ 7108.5, subd. (a) [good faith dispute]; Pub. Contract Code, § 7107, subd. (e) [bona fide dispute].)

---

[3]  "[A] progress payment is a payment other than a down payment that is to be made before the project is completed."  (See *Murray's Iron Works, Inc. v. Boyce* (2008) 158 Cal.App.4th 1279, 1299 & fn. 13 [addressing progress payments in private sector contracts].)  Retention payments are "payments relating to work already done but which are not presently paid, which instead are withheld until completion of 100 percent of the [contractor's] work."  (*Western Landscape Construction v. Bank of America* (1997) 58 Cal.App.4th 57, 59.)

8

A split of authority exists on whether the existence of a good faith dispute should be based on an objective or a subjective standard. (*Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Cas. & Sur. Co. of America* (2005) 133 Cal.App.4th 1319, 1339 [subjective]; *FEI Enterprises, Inc. v. Kee Man Yoon* (2011) 194 Cal.App.4th 790, 805-806 [objective].)

B.  Analysis

The trial court concluded that Triton violated section 7108.5 of the prompt payment statutes by failing to timely remit to GST its portion of progress payments received from the District.  The trial court found that Triton unreasonably withheld payments from GST due under the subcontract.  As of the time of trial, the court found that Triton had unreasonably withheld a minimum of $7,426.15.

Defendants argue Triton cannot be held liable for breach of contract or prompt payment penalties because prevailing wage law statutes and regulations required Triton to withhold payment from GST.  Defendants also contend GST failed to prove the amount and timing of payments that the District made to Triton and thus failed to establish critical elements of GST's prompt payment and breach of contract claims.  The issue presented for review is whether the trial court properly applied the statutes and regulations to the undisputed facts.  Accordingly, our review is de novo.  (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.)

Under the subcontract, GST agreed it would comply with all applicable laws and regulations.  GST also agreed that Triton could reduce or reject a payment application if the District rejected any part of a payment application or based on GST's failure to

9

comply with the terms and conditions of the subcontract. The evidence presented at trial established that between 2011 and 2014, the District's labor compliance program issued a series of audits for GST's work on the project. The audits indicated problems with GST's payroll records and noted that the issues needed to be addressed within 10 days, consistent with subdivision (g) of Labor Code section 1776.

In April 2012, Triton placed a hold on GST's account because it felt that GST had been nonresponsive to audit inquiries. In about June 2012, GST completed its work on the project. On April 26, 2013, the Department of Industrial Relations (DIR) sent a document to the District requesting approval of forfeiture for contract payments based on Triton's inability to resolve audit issues relating to GST. Triton considered this to be an "escalation" as the matter was moving from the District to the DIR.

On April 29, 2013, GST filed its complaint alleging it was due $80,370.93 on six invoices, one dated in 2011, four dated in 2012 and one dated in 2013. At this time, however, GST had not yet resolved its labor code compliance issues. Notably, on May 3, 2013, the District issued a labor investigation notice of GST based on a complaint it had received. Additionally, a May 24, 2013 document entitled "notice of withholding of contract payments" stated that the District's labor compliance program investigation of wages paid to workers determined that Triton had committed Labor Code violations based on the GST audits, including payroll discrepancies and GST's failure to revise and re-submit adequate time records. The total amount of wages and penalties amounted to $13,834.07. At this time, Triton became more concerned about the possibility it might be liable for liquidated damages.

10

The final audit of GST's performance, dated February 10, 2014, revealed underpayment and penalties in the total amount of $5,093.23. GST accepted the liability because it would have cost the company more to put together the additional documentation required by the District. On May 2, 2014, GST received final payment from Triton in the amount of $73,012.90.

Labor Code section 1729 allowed Triton, the general contractor, to withhold funds from GST sufficient to cover penalties withheld by the awarding body, the District, based on GST's failure to comply with the prevailing wage laws. Where, as here, payroll records were inadequate, the District was required to withhold "those payments due or estimated to be due to the contractor or subcontractor whose payroll records are delinquent or inadequate, plus any additional amount that the labor compliance program has reasonable cause to believe may be needed to cover a back wage and penalty assessment against the contractor or subcontractor whose payroll records are delinquent or inadequate." (Regulation 16435(e).) The term "withhold" is defined as "to cease payments by the Awarding Body . . . to the general contractor." (Regulation 16435(a).) Regulation 16435 further provides that where the awarding body (the District) withholds payments due the contractor (Triton), the "contractor shall be required in turn to cease all payments to a subcontractor whose payroll records are delinquent or inadequate until the Labor Compliance Program provides notice that the subcontractor has cured the delinquency or deficiency." (Regulation 16435(e).)

Additionally, subject to prior approval of the labor commissioner, contract payments may be withheld when an investigation establishes a prevailing wage law

11

underpayment.  (Regulation 16435.5(d).)  "Where the violation is by a subcontractor, the general contractor shall be notified of the nature of the violation and reference made to its rights under Labor Code Section 1729."  (Regulation 16435.5(b).)  Triton received such a notice on May 24, 2013, stating that Triton had committed Labor Code violations based on the GST audits and that the total amount of wages and penalties amounted to $13,834.07.

Triton was required by statute to stop all payments to GST until the labor compliance program provided notice that GST had cured the delinquencies or deficiencies in its payroll records.  (Regulation 16435(e).)  During closing argument, Triton asserted it had an excuse for not paying GST as it never received notice from the District that GST had cured the delinquencies or deficiencies in its payroll records.  GST has not cited, and we have not found, any evidence in the record showing Triton received notice from the District that GST had cured the delinquencies or deficiencies in its payroll records.  Rather, Triton's CFO testified that he was unaware of any notice from the District stating that GST had cured the payroll delinquencies or deficiencies.

Assuming evidence existed showing GST had cured all delinquencies or deficiencies in its payroll records, GST was entitled to its share of the progress or retention payment received by Triton within seven days from the time Triton received a progress or retention payment from the District. (§ 7108.5, subd. (a); Pub. Contract Code, § 7107, subd. (d).) As Triton correctly points out, the amount and timing of Triton's payments from the District were elements of GST's prompt payment claims. (*Tesco*, *supra*, 124 Cal.App.4th at pp. 803-804 [prompt payment penalties are triggered upon the general contractor actually receiving payment].) GST presented no evidence showing what portion of the payments Triton received from the District was for work performed by GST, nor did GST indicate it asked the District to provide this information. As of the time of trial, Triton had still not received final payment from the District, did not know what portion of the withheld funds pertained to GST audit issues, but knew that GST was the only subcontractor being audited. Specifically, Triton's CFO testified that the final audit number as to GST was $5,093, and that the District was still withholding $76,500 from Triton. This testimony suggests that at least a portion, if not all, of the funds that the District withheld from Triton was for GST's work.

Finally, even assuming the trial court reasonably inferred from the evidence that Triton failed to pay GST within seven days of Triton receiving payment from the District, the subcontract provided Triton with an additional excuse for failing to pay GST. Namely, GST violated that portion of the subcontract requiring that it comply with all applicable laws and regulations. The subcontract expressly allowed Triton to reduce or

13

reject a payment application if the District rejected any part of a payment application or based on GST's failure to comply with the terms and conditions of the subcontract. The subcontract language amounts to a waiver of the prompt payment requirements of section 7108.5. (*Martin Bros. Const., Inc. v. Thompson Pacific Const., Inc.* (2009) 179 Cal.App.4th 1401, 1417 [parties can contractually agree to alter the timing of progress payments].) It was undisputed that the District found numerous problems with GST's payroll records based on noncompliance with the prevailing wage laws. As of the time of trial, GST was the only subcontractor on the project under audit and the District was still withholding $76,500 from Triton.

The trial court erred in finding that Triton breached the subcontract by withholding payment from GST. GST's failure to comply with prevailing wage laws allowed Triton to withhold payment from GST, and GST failed to present sufficient evidence triggering violation of the prompt payment laws. More fundamentally, the subcontract allowed Triton to reject GST's payment applications based on GST's failure to comply with the prevailing wage law statutes and regulations. Accordingly, the trial court erred in awarding GST penalties under the prompt payment statutes. The judgment against defendants is reversed. (*County of Los Angeles v. Wilshire Ins. Co.* (1975) 44 Cal.App.3d 952, 956 [a surety's liability is co-extensive with liability of its principal].)

14

DISPOSITION

The judgment is reversed.  Defendants are entitled to their costs on appeal.


                                                                    PRAGER, J.*

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.

*       Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to
article VI, section 6 of the California Constitution.