Filed 10/16/20  Jaime v. CarMax Auto Superstores Cal., LLC CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER JAIME,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARMAX AUTO SUPERSTORES CALIFORNIA, LLC,<br><br>    Defendant and Appellant. | D075307<br><br><br><br>(Super. Ct. No. 37-2015-00001014-CU-FR-CTL) |

APPEAL from a judgment and postjudgment order of the Superior Court of San Diego County, Ronald L. Styn, Judge.  Reversed with directions.

Schlichter & Shonack, Kurt A. Schlichter, Steven C. Shonack, Jamie L. Keeton, and William A. Percy for Defendant and Appellant.

Law Offices of Douglas Jaffe and Douglas Jaffe for Plaintiff and Respondent.

Plaintiff Christopher Jaime bought a used Jeep Grand Cherokee from defendant CarMax Auto Superstores California, LLC.  CarMax advertised the Jeep as a "certified" used vehicle.  After Jaime encountered mechanical issues with the Jeep, he brought this lawsuit against CarMax for violations of

the Consumer Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.), among other claims.

At trial, Jaime contended that CarMax had misrepresented that the Jeep was "certified" because it did not meet California's certification standards. (Veh. Code, § 11713.18.) Jaime also contended that CarMax misrepresented the accident history of the Jeep.

In a special verdict, the jury initially found that CarMax had not made any misrepresentations to Jaime in violation of the CLRA. The trial court did not accept this verdict. It believed, based on its jury instruction that CarMax had not complied with Vehicle Code section 11713.18, that the jury was required to find that CarMax made a misrepresentation. The court instructed the jury that it must find a misrepresentation and directed it to deliberate further. Following additional deliberations, the jury found that CarMax made a misrepresentation, that Jaime provided statutory notice to CarMax under the CLRA, and that Jaime suffered damages as a result of a misrepresentation made by CarMax. It awarded Jaime approximately $18,000. The court entered judgment against CarMax and denied CarMax's postjudgment motions for judgment notwithstanding the verdict and a new trial.

CarMax appeals. It raises numerous challenges to the judgment, but we only need to consider one to resolve this appeal. CarMax contends the trial court erred by denying its motion for judgment notwithstanding the verdict on the ground that Jaime had not shown that he provided CarMax with notice of his CLRA claim at least 30 days before filing his complaint. We agree that the evidence introduced at trial does not support the jury's finding that Jaime provided timely notice to CarMax. We therefore reverse the judgment with directions to enter a new judgment in favor of CarMax.

FACTUAL AND PROCEDURAL BACKGROUND

"As required by the rules of appellate procedure, we state the facts in the light most favorable to the judgment." (*Orthopedic Systems, Inc. v. Schlein* (2011) 202 Cal.App.4th 529, 532, fn. 1.) Additional facts will be discussed where relevant in the following section.

In January 2014, Jaime was interested in buying a used car. He researched various options online and settled on a 2011 Jeep Grand Cherokee sold by CarMax. On its website, CarMax represented that its used cars were " 'CarMax Quality Certified' " and had passed a rigorous inspection process. When Jaime went to the CarMax dealership, he asked the salesperson whether the Jeep had been involved in any accidents. She said it had not. Jaime eventually purchased the Jeep from CarMax. He relied on CarMax's representations that the Jeep was "certified" and had not been involved in any accidents. At the time of purchase, CarMax provided Jaime with a list of items that were included in its standard inspection process, but the list did not include any notation whether the individual items had passed or not.

After driving the Jeep for a number of months, Jaime encountered mechanical issues. The engine was overheating, and the radiator coolant was milky-colored. The Jeep's engine began to sputter, and Jaime did not feel safe driving it. He discovered the engine mount was damaged as well.

Jaime consulted an attorney, who sent a demand letter to CarMax on November 26, 2014. The letter provided notice "that Mr. Jaime intends to pursue claims pursuant to the [CLRA] due to your misrepresentation of the standard, quality and/or grade of the vehicle, and your misrepresentations in violation of California Civil Code section 1770(a)(2), (3), (5), (7), and (14)." The letter specifically identified CarMax's representation that the Jeep had not been involved in any accidents. The letter demanded that CarMax

3

rescind the purchase contract for the vehicle, reimburse Jaime for his down payment and monthly payments, and pay for Jaime's repair costs and attorney fees.

Approximately two weeks later, CarMax responded. It denied misrepresenting the Jeep's condition. It stated, "It is CarMax['s] belief that it has met any and all obligations it may have to your client. At this time, CarMax is not willing to rescind the purchase contract for the Vehicle, or otherwise provide your client with the relief that he seeks."

Jaime's attorney replied to CarMax's letter on December 30, 2014. Neither the letter nor its contents were admitted into evidence at trial.

Jaime filed this lawsuit. His operative complaint alleges causes of action under the CLRA and the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.). CarMax's answer generally denied Jaime's allegations and asserted various affirmative defenses.

At trial, Jaime testified about the purchase of the Jeep and the problems he encountered. He claimed damages of $35,000, consisting of his down payment ($6,000), his monthly payments ($11,000), his repair costs ($380), and the balance remaining on his auto loan ($18,000). (All figures are approximate.)

An expert automotive technician testified on Jaime's behalf. He inspected the Jeep and found misaligned body panels, a leaking engine mount, a rough-running engine, and oil contamination in the cooling fluid. Based on these observations, the technician believed the Jeep had been involved in a collision that caused damage to its body and engine.

CarMax presented testimony from its own expert, who opined that the Jeep had not been in a significant or measurable accident. It had some minor scraping and deformation of the front bumper cover, but that was cosmetic.

4

CarMax also presented testimony from a manager responsible for reconditioning CarMax vehicles for sale. He reviewed the inspection and repair history for Jaime's Jeep, which showed that CarMax inspected the Jeep and fixed dents on the front driver's side panel and rear passenger's side panel. CarMax also repaired several pieces of plastic trim and replaced the tires.

The CarMax employee who sold the Jeep to Jaime testified, but she did not recall what she said to him. Generally, she would tell customers that she had no way of knowing the history of a vehicle, but that the vehicle had passed CarMax's rigorous inspection.

For Jaime's CLRA cause of action, the trial court instructed the jury using CACI Nos. 4700 (essential elements) and 4701 (notice). The latter instruction provided as follows: "To recover actual damages in this case Mr. Jaime must prove that, 30 days or more before filing a claim for damages, he gave notice to CarMax that did all of the following: [¶] 1. Informed CarMax of the particular violations of Civil Code section 1770 for which the lawsuit was brought; [¶] 2. Demanded that CarMax correct, repair, replace, or otherwise fix the problem with the used Jeep Grand Cherokee; and [¶] 3. Provided the notice to the defendants in writing and by certified or registered mail, return receipt requested, to the place where the transaction occurred or to CarMax's principal place of business within California. [¶] Mr. Jaime must have complied exactly with these notice requirements and procedures."

The court also provided a special instruction to the jury based on its interpretation of *Gonzales v. CarMax Auto Superstores, LLC* (9th Cir. 2016) 840 F.3d 644, which held that CarMax's standard list of items inspected did not comply with Vehicle Code section 11713.18, subdivision (a)(6) and

5

therefore violated the CLRA. The special jury instruction stated, "Mr. Jaime did not receive any document that complied with Vehicle Code section 11713.18(a), which requires that to label a vehicle as 'certified' a dealer must provide a consumer with a completed inspection report indicating all components inspected prior to sale. This failure to comply with the Vehicle Code was a violation of the [CLRA]."

In his closing argument, Jaime's counsel focused on CarMax's failure to give Jaime a proper inspection report. He addressed notice by referencing the two letters in evidence: his demand letter to CarMax and CarMax's response. He stated that CarMax would probably argue "this didn't give us enough notice" regarding the substance of Jaime's claims because it did not specifically address the inspection report. But he contended that the letter's reference to the applicable section and subdivision of the CLRA was sufficient. He did not mention the 30-day requirement.

CarMax's counsel responded that any deficiency in its inspection report was unimportant to Jaime, so he could not claim damages based on that theory. He claimed that CarMax had inspected the Jeep, so Jaime received what he expected to get, i.e., a vehicle that had passed CarMax's rigorous inspection. He denied that CarMax had made any misrepresentations about the Jeep's accident history.

Regarding notice, CarMax's counsel reiterated the requirement from the court's jury instruction that Jaime must have informed CarMax of the particular alleged CLRA violations "at least 30 days before" filing the lawsuit. He argued that Jaime's demand letter was inadequate because it did not specifically identify a violation based on a deficient inspection report.

In his rebuttal, Jaime's counsel stated, "Clearly the case was filed over 30 days from the notice, which was in November. In this case you can see

6

right on the verdict form it was a 2015 case. There's no dispute that it was filed more than 30 days [*sic*]." At that point, CarMax's counsel said, "Objection, Your Honor." The court said, "Excuse me?" and CarMax's counsel responded, "Withdrawn." Jaime's counsel continued with his argument.

The special verdict form addressed Jaime's CLRA cause of action in four questions. The first asked, "Did CarMax make a misrepresentation to a consumer (Christopher Jaime) during the sale of the Jeep Grand Cherokee in violation of the [CLRA]?" The second asked, "Did Mr. Jaime provide notice to CarMax under the [CLRA]?" The third asked, "Did Mr. Jaime suffer damage as a result of a misrepresentation made by CarMax?" The fourth asked the jury to identify Jaime's damages in four categories: down payment, monthly payments, loan balance, and incidental and consequential damages.

During deliberations, the jury sent a note: "There was mention of Exhibit 12 in the testimony. Did it get moved into evidence as we don't seem to have it." The exhibit in question was Jaime's counsel's reply to CarMax's response to his demand letter. The court responded that the exhibit was not received into evidence and was not sent back with the jury.

The jury informed the court it had reached a verdict. After reviewing the completed verdict form, the court asked to speak to the attorneys at sidebar. The court told them that the jury had answered "No" in response to the first question, regarding a misrepresentation. The court believed that under its special instruction the jury was required to answer "Yes." CarMax's counsel suggested that perhaps the jury found that any misrepresentation was not material, but the court pointed out that materiality was not part of the question at issue.

The court reminded the jury of its special instruction and directed them to answer "Yes" to the first question on the verdict form. It continued, "So

7

you will have to go back and answer Questions 2 and answer that, then 3, et cetera."

After a short break for further deliberations, the jury returned another verdict. In this verdict, the jury answered "Yes" to the first, second, and third questions. It awarded Jaime zero dollars for his down payment, monthly payments, and incidental and consequential damages. But it awarded him approximately $18,000 for his remaining loan balance. The jury rejected Jaime's Song-Beverly cause of action. It answered "Yes" to the following questions: "Was the Jeep Grand Cherokee of the same quality as those generally acceptable in the trade?" and "Was the Jeep Grand Cherokee fit for the ordinary purposes for which such goods are used?" The court entered judgment in Jaime's favor for $18,000, plus attorney fees and costs to be determined.

CarMax moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. As relevant here, CarMax argued the evidence did not support the jury's finding that Jaime had provided his CLRA notice at least 30 days before filing his lawsuit. It pointed out that Jaime had not offered any evidence of the date he filed his lawsuit, so the jury could not have determined whether it was at least 30 days after his demand letter. CarMax also contended the evidence did not support the jury's finding that Jaime's CLRA notice was sufficient as a substantive matter, the court's special jury instruction was ambiguous and confusing, and the court's direction to deliberate further was improper and unduly coercive.

The court denied the motions. A settled statement describes the court's reasoning. On notice, the court "found that there were implications that thirty (30) days elapsed between the date of the notice and the filing of the complaint, specifically identifying [Jaime's counsel's] statement in closing

8

argument that the lawsuit was filed in 2015 and stating that the pleadings were sufficient to make that showing. . . . The Court indicated that it did not believe it mattered if the jury was aware of the pleadings on file with the Court, because the fact that the pleadings were on file was sufficient to establish the date of the filing of the complaint." The settled statement cites, as evidence, Jaime's demand letter, CarMax's response, and Jaime's testimony regarding his counsel's reply. It concludes, "This action was commenced on January 12, 2015, and CarMax waived its objection regarding reference to evidence of the year this action was filed." CarMax appeals.

DISCUSSION

CarMax's contentions in this appeal largely mirror those in its postjudgment motions. We need not consider most of those contentions because, as noted, one is dispositive. CarMax contends the court erred by denying its motion for judgment notwithstanding the verdict because the evidence does not show that Jaime sent his CLRA notice to CarMax at least 30 days prior to filing this lawsuit. We agree the court erred and CarMax is entitled to judgment.

"A trial court must render judgment notwithstanding the verdict whenever a motion for a directed verdict for the aggrieved party should have been granted. (Code Civ. Proc., § 629.) A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support. [Citation.] [¶] The moving party may appeal from the judgment or from the order denying the motion for judgment notwithstanding the verdict, or both. (Code Civ. Proc., § 904.1, subd. (a)(4) [making such an order appealable].) As in the trial court, the standard of review is whether any substantial evidence—contradicted or

9

uncontradicted—supports the jury's conclusion." (*Sweatman v. Dept. of Veterans Affairs* (2001) 25 Cal.4th 62, 68.)

"Substantial evidence is not ' "synonymous with 'any' evidence. It must be reasonable . . . , credible, and of solid value . . . ." [Citation.]' [Citation.] However, 'the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination [of the trier of fact], and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the [trier of fact].' " (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 845-846.)

"It is axiomatic that the unsworn statements of counsel are not evidence." (*In re Zeth S.* (2003) 31 Cal.4th 396, 413, fn. 11 (*Zeth S.*); accord, *City of Santa Maria v. Adam* (2019) 43 Cal.App.5th 152, 163.) Likewise, documents lodged with the court or identified at trial, but not admitted into evidence, do not constitute substantial evidence that may support a jury verdict. (*Acqua Vista Homeowners Assn. v. MWI, Inc.* (2017) 7 Cal.App.5th 1129, 1159-1160 (*Acqua Vista*).) Our appellate record is not coextensive with the evidence to be considered on a motion for judgment notwithstanding the verdict. (*Id.* at p. 1160, fn. 45 ["[E]ven assuming that the [document] is in the *record*, it is clear that because the [document] was not offered in *evidence*, it may not be relied upon to support the verdict."].) To assess whether the jury's verdict is supported by the evidence, we consider only the evidence the jury had before it in rendering its verdict.

"[T]he definitional elements of a plaintiff's cause of action describe the minimum showing which the plaintiff must make to support a favorable

judgment. [Citations.] Accordingly, in order for the plaintiff to prevail the record must contain sufficient evidence to support a finding in its favor on each and every element which the law requires to support recovery. [Citation.] No matter how overwhelming the proof of some elements of a cause of action, a plaintiff is not entitled to a judgment unless there is sufficient evidence to support all of the requisite elements of the cause of action." (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1205.)

Timely notice is an element of Jaime's cause of action under the CLRA. Civil Code section 1782, subdivision (a) provides as follows: "Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following: [¶] (1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770. [¶] (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770. [¶] The notice shall be in writing and shall be sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California." (Statutory references in this paragraph are to the Civil Code.)

CarMax's general denial put at issue the material allegations of Jaime's complaint, including the elements of his CLRA cause of action. (Code Civ. Proc., § 431.30, subd. (d); *Advantec Group, Inc. v. Edwin's Plumbing Co.* (2007) 153 Cal.App.4th 621, 627 (*Advantec*).) Thus, at trial, Jaime had the initial burden of proving the element of timely notice, regardless of CarMax's evidentiary showing. (See Evid. Code, § 500; *Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 464.)

11

The trial court instructed the jury that it was Jaime's burden to prove this element: "To recover actual damages in this case, Mr. Jaime must prove that, 30 days or more before filing a claim for damages, he gave notice to CarMax" in accordance with the statute. (See CACI No. 4701.) It told the jury, "Mr. Jaime must have complied exactly with these notice requirements and procedures." (See *ibid*.) The special verdict form likewise included a question on notice.

In its second verdict, following further deliberations, the jury found that Jaime had given CarMax notice under the CLRA. The evidence does not support the jury's determination. Jaime's demand letter, which purported to give CLRA notice, was admitted into evidence. But the jury had no evidence of the date Jaime filed his claim for damages. His complaint was never admitted into evidence. There was no testimony about its filing. Given this absence, the jury had no way to determine that Jaime provided notice at least 30 days before filing a claim for damages. The judgment must be reversed.

Reversal of the judgment is compelled by the fundamental principal that a plaintiff has the responsibility of proving his case by admissible evidence. The Court of Appeal's opinion in *Advantec*, *supra*, 153 Cal.App.4th 621 is instructive in this context. The trial court in *Advantec* granted a motion for nonsuit based on a contractor's failure to produce verified evidence of licensure. (*Id.* at p. 626.) Licensure was an element of the contractor's claim, which was put at issue by the opposing party's general denial. (*Id.* at p. 627.) The contractor did not offer evidence of licensure, so nonsuit was properly granted. (*Ibid.*)

Going further, *Advantec* held that it was not an abuse of discretion for the trial court to deny a continuance to allow the contractor to obtain evidence of licensure. (*Advantec*, *supra*, 153 Cal.App.4th at p. 630.) "[T]he

12

strong, clear policy of the law placed the burden squarely on [the contractor] as to proof of its licensure. . . . [The contractor] could have had available for trial a verified certificate of its licensure, or could have clarified by way of contention interrogatories whether [the opposing party] intended to contest the validity of its license, but it did neither. It is not accurate to say, as does [the contractor], that [the opposing party] did not raise the issue until midtrial; as we have held, [the] general denial placed the issue in controversy. Nor can [the opposing party's] conduct be described as sandbagging, where the clear weight of the statutory burden fell on [the contractor] to prove its licensure." (*Id.* at p. 631.) Although a request for continuance is not at issue, these comments resonate here.

To support the jury's verdict, Jaime points to his counsel's second letter to CarMax, after CarMax responded to his demand letter. While Jaime testified to the date of this letter, neither the letter nor its contents were admitted into evidence. It therefore cannot support the jury's verdict. (See *Acqua Vista, supra*, 7 Cal.App.5th at pp. 1159-1160.) Jaime's testimony, which does not disclose the contents of the letter, likewise provides no basis for the jury to place the letter in relation to Jaime's complaint, whether before or after. Jaime argues that the existence of the letter shows "he was still engaging in correspondence with CarMax" more than 30 days after the demand letter. But because the jury was not informed of the contents of the letter, it could only speculate that the existence of the letter meant that a complaint had not yet been filed. It would not be reasonable to conclude that the complaint had not been filed merely on the basis of the existence of correspondence between attorneys. The filing of a complaint does not end such correspondence.

Jaime contends "[t]here was never any dispute" that he provided CLRA notice at least 30 days before filing the complaint. But, as noted, CarMax's general denial put at issue the material allegations of Jaime's complaint, including the element of timely notice under the CLRA. Jaime had the initial burden of proving this element. CarMax did not need to dispute it at trial with evidence or argument of its own. (See *Vaughn v. Coccimiglio* (1966) 241 Cal.App.2d 676, 678-679.)

Jaime's claim that evidence of timeliness would not be relevant or admissible is unpersuasive. It is an element of Jaime's cause of action, and CarMax did not agree by stipulation or otherwise to remove it from dispute. This element was included in the trial court's jury instructions and was encompassed in the special verdict form provided to the jury. It was not CarMax's burden to disprove this element; Jaime was required to prove each element of his cause of action with admissible evidence. (Cf. *Nguyen v. Los Angeles County Harbor/UCLA Medical Center* (1992) 8 Cal.App.4th 729, 732-734 [appellate court affirmed the dismissal of plaintiffs' claims based on their failure to comply with Government Claims Act (Gov. Code, § 810 et seq.) claim presentation requirements, where defendants raised the issue in a motion for nonsuit at the close of plaintiffs' case].)

Jaime relies on his counsel's closing argument, in which he asserted that the case number of the verdict form (which included the number "2015") showed that the complaint was filed more than 30 days after the demand letter. But his counsel's argument was not evidence (*Zeth S., supra,* 31 Cal.4th at p. 413, fn. 11), and the jury was so instructed (CACI Nos. 106, 5002). The case number itself (37-2015-00001014-CU-FR-CTL) provides no basis for the jury to determine when the complaint was filed. Even assuming the jury could properly consider the number as evidence, its meaning is not

14

self-evident—especially to a nonattorney.  The jury could only speculate that the "2015" in the case number meant that a complaint for damages was filed in the standard calendar year of 2015.  Based on the information available to the jury, the number "2015" may not have been a reference to a calendar year at all.  It is insufficient to support the jury's verdict.  (See *Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651 ["Speculation or conjecture alone is not substantial evidence."].)

The fact that CarMax's counsel objected to Jaime's argument, and then withdrew that objection, is irrelevant.  As noted, attorney argument is not evidence.  CarMax's failure to object, or its decision to withdraw an objection, does not affect Jaime's burden to prove the elements of his cause of action to the jury.

In sum, CarMax filed a general denial to Jaime's operative complaint and thereby placed at issue all elements of Jaime's CLRA cause of action, including timely notice.  The jury instructions and special verdict form confirmed that this element was at issue at trial.  Jaime simply did not prove this element with admissible evidence.  The jury's finding of timely notice had no evidentiary basis, and the judgment thereon must be reversed.  (See Code Civ. Proc., § 629, subd. (c); *Sukoff v. Lemkin* (1988) 202 Cal.App.3d 740, 751.)

## DISPOSITION

The judgment is reversed.  The postjudgment order denying CarMax's motion for judgment notwithstanding the verdict is reversed.  The trial court

15

is directed to grant the motion and enter judgment in favor of CarMax. CarMax shall recover its costs on appeal.

GUERRERO, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.