[No. B205608. Second Dist., Div. Five. Mar. 24, 2009.]

THERESA OCEGUERA, Plaintiff and Respondent, v.
DAVE COHEN et al., Defendants and Appellants.

COUNSEL

Jonathan G. Gabriel and Jeffrey P. Alpert for Defendants and Appellants.

Julian Eli Capata for Plaintiff and Respondent.

OPINION

**TURNER, P. J.—**

## I. INTRODUCTION

Business and Professions Code[1] section 7031, subdivision (b) permits a consumer to sue an unlicensed contractor for a refund of moneys paid under a construction contract. Such a refund claim is subject to the defense the unlicensed contractor was in "substantial compliance" with the licensing requirement. The four elements of the substantial compliance defense of an unlicensed contractor to a consumer's refund claim are specified in section 7031, subdivision (e). In this case, we conclude substantial evidence supports the trial court's express and implied findings that defendants, L. A.'s Best Home Improvement, a general partnership (the partnership), Dave Cohen, and Yossi Grimberg, were unlicensed contractors who did not act in substantial compliance with the licensing requirement. We affirm the $32,500 judgment in favor of plaintiff, Theresa Oceguera, for the money she paid to defendants for construction work performed on her home.

## II. BACKGROUND

This is the second appeal between the parties related to plaintiff's March 1, 2004 complaint against defendants for work performed on her home. In the first appeal, in an unpublished opinion, we affirmed a damages award in her favor for defective construction work. (*Oceguera v. Cohen* (Aug. 10, 2006, B186506) [nonpub. opn.].) We also reversed and remanded the matter for a limited retrial of two causes of action—for return of money pursuant to section 7031, subdivision (b) (second) and unfair competition in violation of section 17200 (sixth). (*Oceguera v. Cohen, supra,* B186506.) We concluded that the trial court had erred in summarily adjudicating the partnership was duly licensed at all times it performed the construction contract due to conflicting evidence as to when the qualifying or responsible managing employee, Arie Golan, disassociated himself from the partnership. That partnership had

---

[1] All further statutory references are to the Business and Professions Code unless otherwise indicated.

previously consisted of Mr. Golan, Mr. Cohen, and Mr. Grimberg. (*Ibid.*) We further held, "[T]he existence of this controversy required defendants to produce a verified certificate of licensure pursuant to section 7031, subdivision (d)." (*Ibid.*)

The limited retrial reveals the following facts and circumstances. Prior to March 2003, the partnership engaged in the construction business with three partners, Mr. Golan, Mr. Cohen, and Mr. Grimberg. Mr. Golan was the licensed partner and the responsible managing employee. On May 4, 2003, Mr. Golan, the only licensed partner, executed a disassociation notice pursuant to section 7076, subdivision (c).[2] On May 6, 2003, the partnership filed a fictitious business name statement which listed Mr. Cohen and Mr. Grimberg as the only partners of the partnership.

The construction contract at issue was entered into on June 16, 2003. Work commenced the next day on June 17, 2003. Between June 17, 2003, and June 27, 2003, Ms. Oceguera paid the partnership $32,000 for construction work on her home. There were "quite a few" defects in the construction. Ms. Oceguera testified that she never saw Mr. Golan on the jobsite. Neither Mr. Cohen nor Mr. Grimberg was a licensed contractor between May 2003 and June 2003 when the construction work was performed at plaintiff's home.

Mr. Cohen and Mr. Grimberg gave conflicting testimony as to when Mr. Golan disassociated from the partnership. According to Mr. Grimberg, Mr. Golan no longer had any interest in the partnership after May 3, 2003. In contrast, Mr. Cohen testified that Mr. Golan continued to act as a partner "until the end of the month of July" 2003.

Defendants did not produce a verified certificate that any entity other than the partnership with Mr. Golan held a license prior to and during the times that construction work was performed on Ms. Oceguera's home. Rather,

---

[2] Section 7076, subdivision (c) states: "A partnership license shall be canceled upon the disassociation of a general partner or upon the dissolution of the partnership. The disassociating partner or the remaining partner or partners shall notify the registrar in writing within 90 days of the disassociation of a general partner or dissolution of the partnership. Failure to notify the registrar of the disassociation or dissolution within 90 days shall cause the license to be canceled effective the date the written notification is received at the board's headquarters office. Failure to notify the registrar within 90 days of the disassociation or dissolution is grounds for disciplinary action. The remaining general partner or partners may request a continuance of the license to complete projects contracted for or in progress prior to the date of disassociation or dissolution for a reasonable length of time to be determined by rules of the board. The request for a continuance must be made in writing and received at the board's headquarters office within 90 days after the disassociation or dissolution. The remaining general partner or partners must apply for and obtain a new license to undertake new work and to continue contracting after the continuance expires."

defendants' argument that they were not required to refund payments was predicated on the following theories: the partnership consisting of Mr. Golan, Mr. Cohen, and Mr. Grimberg held a license during the pertinent times; Mr. Golan did not officially disassociate himself from the former partnership until July 2003; and the current partnership substantially complied with licensing requirements sometime in July 2003.

In support of defendants' substantial compliance theory, Mr. Grimberg testified that he submitted documents to the Contractors' State License Board (the board) to change the qualifying or responsible managing officer in July 2003. Mr. Cohen testified that the partnership ultimately obtained a continuance from the board. The continuance was to allow the partnership to complete projects that had been commenced prior to Mr. Golan's disassociation. Mr. Grimberg testified Mr. Golan's disassociation notice was filed with the board on July 30, 2003. Thus, although Mr. Golan signed the notice of disassociation in May 2003, according to Mr. Grimberg, it was not submitted to the board until or around July 30, 2003.

Nevertheless, a document file-stamped by the board on July 15, 2003, entitled "Application for Replacing the Qualifying Individual" states that the exact date of Mr. Golan's disassociation was May 24, 2003. On August 7, 2003, an unsigned letter from Linda Loudon in the license modification unit of the board states the partnership's license was cancelled on May 24, 2003, due to Mr. Golan's disassociation. According to Ms. Loudon's letter, his disassociation caused "the automatic cancellation" of the license. Ms. Loudon's letter also stated the remaining partners were entitled to continue conducting business one year from the date of disassociation if a request for continuance was made in writing. In order to be effective, the continuance request would have to be filed with the registrar within 90 days of Mr. Golan's disassociation. The letter further provided that defendants could not contract for any additional projects while conducting business under a continuance. Defendants did not object to the consideration of Ms. Loudon's letter.

The trial court ruled plaintiff was entitled to a judgment on the second cause of action for return of money paid. The trial court ruled the unfair business practice claim was moot because both Mr. Cohen and Mr. Grimberg were licensed by the time of the trial. In rendering its decision, the trial court ruled: "I think this is obviously a case where we're talking about substantial compliance, not about whether or not there was a license in effect at the time. There was this retroactive cancellation of the license. [¶] But even if it had been retroactive, once the responsible managing employee ceases to function in that capacity, it's as if there is no license at all. [¶] Now, the evidence is somewhat conflicting as to Mr. Golan's position in the partnership. We do

have the fictitious name statement filed in May of [2003]. We had the notice of disassociation . . . which states the date is May 4 of [2003]. We have Mr. Grimberg's testimony where he believed he was no longer involved as of May of [2003]. We also have plaintiff's testimony that she never saw Mr. Golan at the job site and no evidence from the defendant that he was ever there. The only evidence we have is Mr. Cohen's testimony regarding Mr. Golan being involved until July. [¶] I think, weighing the evidence, I don't think . . . defense has met their burden of proof in terms of Mr. Golan's involvement; therefore, it would appear that he was not involved as of May of [2003]. That being the case, it is as if there was no license at all the retroactive finding of the board. [¶] So then, I think we need to address whether or not there is substantial compliance, nevertheless. You know, I appreciate the fact that the defendants did everything they thought they should be doing in terms of trying to rectify the situation, that they were sending letters back and forth, that they ultimately did get their licenses, but I don't know I can get around, you know, the plain language of . . . [section 7031, subdivision (e)] where it says that the doctrine of substantial compliance shall not apply if the contractor has never been a duly licensed contractor in the state. I don't see a whole lot of wiggle room in that code section. I think it may, in fact, work something of an injustice, because your clients did do work. The quality of the work was the subject of another litigation, but be that as it may, I think the language of the statute controls, and I just don't see a way around it. [¶] And of course as recognized, there are other harsh results in terms of licensing requirements and their policy reasons for that. But nevertheless, I think I'm bound by the plain language of the statute to find in favor of plaintiff, in that the . . . doctrine of substantial compliance is not available where individuals were not licensed at the time of the act."

Defense counsel requested the trial court clarify whether its ruling interpreted the word "person" as used in section 7031, subdivision (e) to mean "individuals" who comprised the partnership. The trial court replied: "I should also indicate for the record that the certification of course is only presumptive evidence of licensure. So that is my interpretation, yes. And the two individuals that make up the partnership at the time we're talking about, neither one was licensed." Defendants filed a timely notice of appeal from the judgment.

## III. DISCUSSION

■ Our Supreme Court has synthesized the relevant portions of the contractor licensing scheme thusly: "[T]he Contractors' State License Law (. . . § 7000 et seq.) imposes strict and harsh penalties for a contractor's failure to maintain proper licensure. Among other things . . . regardless of the

merits of the claim, a contractor may not maintain any action, legal or equitable, to recover compensation for 'the performance of any act or contract' unless he or she was duly licensed '*at all times* during the performance of that *act or contract.*' (§ 7031, subd. (a) . . . .)" (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 418 [30 Cal.Rptr.3d 755, 115 P.3d 41], fn. omitted; see *Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 995 [277 Cal.Rptr. 517, 803 P.2d 370] ["The obvious statutory intent is to discourage persons who have failed to comply with the licensing law from offering or providing their unlicensed services for pay."].) The burden to prove licensure rests with the party asserting a contractor is licensed. (§ 7031, subd. (d) ["When licensure or proper licensure is controverted, the burden of proof to establish licensure or proper licensure shall be on the licensee."]; *Advantec Group, Inc. v. Edwin's Plumbing Co., Inc.* (2007) 153 Cal.App.4th 621, 626 [63 Cal.Rptr.3d 195].)

 Further, subject to the defense there is substantial compliance with the Contractors' State License Law (§ 7000 et seq.), an action may be brought by a person utilizing the services of an unlicensed contractor to recover compensation paid for the work. (§ 7031, subd. (b);[3] *Goldstein v. Barak Construction* (2008) 164 Cal.App.4th 845, 854 [79 Cal.Rptr.3d 603].) The substantial compliance exception is codified in section 7031, subdivision (e)[4] and was synthesized by our Supreme Court in a case where a contractor had never been properly licensed to perform structural steel work: "In particular, the statute specifies that '[t]he judicial doctrine of substantial compliance shall not apply' unless the contractor '*had* been duly licensed as a contractor in this state *prior* to the performance of the *act or contract*' for which licensure was required. (§ 7031, subd. (e), italics added; cf. *id.*, former subd. (d); Stats. 1994, ch. 550, § 1, p. 2803 . . . .)" (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc., supra*, 36 Cal.4th at pp. 418–419.) At another point in the *MW Erectors, Inc.* decision, our Supreme Court held:

---

[3] Section 7031, subdivision (b) states, "Except as provided in subdivision (e), a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract."

[4] Section 7031, subdivision (e) states: "The judicial doctrine of substantial compliance shall not apply under this section where the person who engaged in the business or acted in the capacity of a contractor has never been a duly licensed contractor in this state. However, notwithstanding subdivision (b) of Section 143, the court may determine that there has been substantial compliance with licensure requirements under this section if it is shown at an evidentiary hearing that the person who engaged in the business or acted in the capacity of a contractor (1) had been duly licensed as a contractor in this state prior to the performance of the act or contract, (2) acted reasonably and in good faith to maintain proper licensure, (3) did not know or reasonably should not have known that he or she was not duly licensed when performance of the act or contract commenced, and (4) acted promptly and in good faith to reinstate his or her license upon learning it was invalid."

"[I]n order to invoke former subdivision (d)'s substantial compliance exception, a contractor who was technically unlicensed at any time during performance was required to establish that he or she had been duly licensed at some time *before* performance *began*. The obvious purpose of the subdivision was to limit application of the substantial compliance doctrine to those contractors who, at some time before beginning performance, *had* held valid California contractor's licenses." (*Id.* at pp. 431–432.) It bears emphasis that in *MW Erectors, Inc.*, the contractor had not been properly licensed prior to the commencement of the work. (*Id.* at pp. 419–420, 432.)

█ In order to recover for unpaid sums due under a construction contract or defend against a section 7031, subdivision (b) refund claim, a partnership itself must be licensed subject to a substantial compliance defense. (*Lewis & Queen v. N. M. Ball Sons* (1957) 48 Cal.2d 141, 146–149 [308 P.2d 713] [suit by contractor]; see *Gen. Ins. Co. of America v. St. Paul Fire & Marine Ins. Co.* (1974) 38 Cal.App.3d 760, 766, fn. 5 [113 Cal.Rptr. 613] [prime contractor's surety's suit against subcontractor's bonding company for damages resulting from a default]; *Frank v. Kozlovsky* (1970) 13 Cal.App.3d 120, 123 [91 Cal.Rptr. 297] [suit by contractor].) Qualification of a partnership for a license requires the presence of a licensed general partner or responsible managing employee pursuant to section 7068, subdivision (b)(2) which states in part: "An applicant shall qualify in regard to his or her experience and knowledge in one of the following ways: [¶] . . . [¶] (2) If a copartnership . . . , it shall qualify by the appearance of a general partner or by the appearance of a responsible managing employee who is qualified for the same license classification as the classification being applied for." Here, the partnership was unlicensed when the June 16, 2003 contract was entered into with plaintiff and work began the next day. Prior to his disassociation from the partnership, it was properly licensed because Mr. Golan was the licensed general partner and responsible managing employee. (See 1 Cal. Construction Contracts, Defects, and Litigation (Cont.Ed.Bar 2008) § 1.9, p. 12.)

█ The disassociation of Mr. Golan from the partnership triggered events under the licensing statutes. As noted (see fn. 2, *ante*), section 7076, subdivision (c) provides in part: "A partnership license shall be canceled upon the disassociation of a general partner or upon the dissolution of the partnership. The disassociating partner or the remaining partner or partners shall notify the registrar in writing within 90 days of the disassociation of a general partner or dissolution of the partnership. . . . The remaining general partner or partners may request a continuance of the license to complete projects contracted for or in progress prior to the date of disassociation . . . . The remaining general partner or partners must apply for and obtain a new license to undertake new work and to continue contracting after the continuance expires." Because no continuance was requested prior to the entry into the June 16, 2003 contract with plaintiff and the commencement of work the

next day, there is no substantial evidence the partnership's license was continued. In addition, section 7075.1, subdivision (a) prohibited the transfer of a license issued to the partnership on the basis of Mr. Golan's qualifications to any other person or entity under any circumstances. (See *WSS Industrial Construction, Inc. v. Great West Contractors, Inc.* (2008) 162 Cal.App.4th 581, 594 [76 Cal.Rptr.3d 8].) Section 7075.1, subdivision (b)(2) prohibits the transfer of a cancelled license number to a partnership where there is a change in the partners or in the partnership structure.[5] Thus, when the contract was entered into on June 16, 2003, and the work commenced the next day, the partnership was unlicensed as were Mr. Cohen and Mr. Grimberg.

We turn now to defendants' argument they were acting in substantial compliance with the licensing requirement when the contract with plaintiff was entered into on June 16, 2003, and work commenced. Defendants' challenges to the trial court's ruling involve the interpretation of a statute and its application to disputed factual issues. To the extent the interpretation of the statute is based on undisputed facts, it presents a question of law subject to de novo review. *(People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *Treweek v. City of Napa* (2000) 85 Cal.App.4th 221, 223 [101 Cal.Rptr.2d 883].) However, we review disputed factual matters for substantial evidence. *(Taxpayers for Livable Communities v. City of Malibu* (2005) 126 Cal.App.4th 1123, 1126 [24 Cal.Rptr.3d 493]; *Saathoff v. City of San Diego* (1995) 35 Cal.App.4th 697, 700–701 [41 Cal.Rptr.2d 352].)

■ Section 7031, subdivision (e) allows a person who is unlicensed, when work is performed, to rely on the substantial compliance defense to a refund claim when all four of the following factors are present. (See fn. 4, *ante.*) First, the person or entity must have previously been licensed as a contractor prior to performance under the contract. Second, the entity or person must have acted reasonably and in good faith to maintain proper licensure. Third, the person must not know or reasonably should not have known that he or she was not duly licensed when performance of the act or contract commenced. *And,* fourth, the individual must have acted promptly and in good faith to reinstate his or her license upon learning it was invalid. Section 7031, subdivision (e) requires all four elements of the substantial compliance defense to be present.

---

[5] The *provisions of section 7075.1* relevant to this appeal state: "(a) No license, regardless of type or classification, shall be transferable to any other person or entity under any circumstances. [¶] (b) A license number may be reissued after cancellation, revocation, suspension, or expiration beyond the renewal period specified in Section 7141, only under the following circumstances: [¶] . . . [¶] (2) To a partnership upon application if there is no change in the partners or partnership structure."

■ Complicating matters somewhat is that there are two sets of defendants. There is the partnership which was licensed at one time before Mr. Golan disassociated himself. On the other hand, neither Mr. Cohen nor Mr. Grimberg was licensed prior to entry into the contract on June 16, 2003, and the commencement of work the next day. Common sense tells us that in assessing the partnership's ability to assert the substantial compliance defense to a section 7031 refund claim, we examine the conduct of the partners: Mr. Cohen and Mr. Grimberg. The language in section 7031, subdivision (e) concerning the "person who engaged in the business" (see fn. 4, *ante*) refers to the entity which asserts it is licensed or individuals who claim they possess a contractor's license.

We begin by analyzing the potential liability of Mr. Cohen and Mr. Grimberg. They are in the same situation as was discussed in *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc., supra*, 36 Cal.4th at pages 418–419 and 431–432. They were never licensed prior to entry into the June 16, 2003 contract with plaintiff and the commencement of work the next day. They do not dispute they provided services as contractors. Further, there is no merit to their contention that, as a matter of law, the partnership was licensed when the contract with plaintiff was signed on June 16, 2003, and work commenced the next day. The trial court resolved the conflicting evidence on this issue adversely to defendants. The trial court ruled that, notwithstanding Mr. Cohen's claims to the contrary, Mr. Golan's association with the partnership ended in May 2003. The determination is supported by the board's finding that Mr. Golan's disassociation meant the license was cancelled effective May 24, 2003. Moreover, on May 6, 2003, Mr. Cohen and Mr. Grimberg filed a fictitious business name statement for their partnership which did not list Mr. Golan as a partner. Thus, there is substantial evidence Mr. Golan, who indisputably was the only qualified general partner and responsible managing employee within the meaning of section 7068, subdivision (b)(2), had disassociated himself from the partnership with Mr. Cohen and Mr. Grimberg by May 24, 2003, prior to the time the construction contract with plaintiff was entered into on June 16, 2003, and work began the next day. Because Mr. Cohen and Mr. Grimberg were never licensed prior to the time the contract was entered into on June 16, 2003, and work commenced the next day, the substantial compliance provisions of section 7031, subdivision (e) are inapplicable to them. (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc., supra*, 36 Cal.4th at pp. 418–419, 431–432.)

The issue is different though as to the partnership. The partnership was licensed at one time by reason of Mr. Golan's presence as a partner and responsible managing employee. Thus, unlike Mr. Cohen and Mr. Grimberg, the partnership can assert a substantial compliance defense. The trial court ruled that once Mr. Golan ceased to be a partner and a responsible managing

employee, it was as if there was no license at all. That does not resolve the substantial compliance issue though. All four of the factors set forth in section 7031, subdivision (e) must all be present in order for an unlicensed contractor to defend against a refund action. One factor—the partnership's prior licensure—was present.

As to the remaining three requirements set forth in section 7031, subdivision (e)—reasonable and good faith efforts to maintain licensure; an absence of a good faith belief in licensure; and prompt and good faith efforts to secure a license—there is substantial evidence the partnership did not prove all three of the remaining elements of the substantial compliance defense to plaintiff's section 7031, subdivision (b) refund claim. Defendants did not request a statement of decision. Thus, we presume the judgment to be correct and imply all findings necessary to uphold it. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227] ["A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness"]; *Michael U. v. Jamie B.* (1985) 39 Cal.3d 787, 792–793 [218 Cal.Rptr. 39, 705 P.2d 362], superseded by statute on other grounds as stated in *In re Zacharia D.* (1993) 6 Cal.4th 435, 448, 449 [24 Cal.Rptr.2d 751, 862 P.2d 751] ["In the present case, however, the parties did not request a statement of decision or findings of fact. Under these circumstances, all intendments favor the ruling below . . . and we must assume that the trial court made whatever findings are necessary to sustain the judgment." (Citation omitted.)].)

■ Here there is substantial evidence Mr. Cohen and Mr. Grimberg actually knew or should have known the partnership was unlicensed within the meaning of section 7031, subdivision (e). The trial court could reasonably find that prior to the June 16, 2003 entry into the contract with plaintiff both Mr. Cohen and Mr. Grimberg knew they were not licensed; Mr. Golan, the only responsible managing employee had executed a disassociation; on May 6, 2003, Mr. Cohen and Mr. Grimberg filed a fictitious business name statement which did not include Mr. Golan; and Mr. Grimberg was familiar with the concept of a responsible managing employee. The trial court was free to disbelieve the claims of Mr. Cohen and Mr. Grimberg that they thought the partnership was licensed. They were unlicensed and the only licensed partner, Mr. Golan, had left the partnership. Accordingly, the trial court could reasonably find that the partnership was not in substantial compliance with the licensing requirement even though it was licensed at one time. Therefore, the partnership must refund the moneys paid by plaintiff because defendants failed to prove that Mr. Cohen and Mr. Grimberg did not know or should not have known the partnership was unlicensed within the meaning of section 7031, subdivision (e). We need not address the issue of the effect of the finding the partners were liable for a refund on the

partnership's potential liability. (Corp. Code, § 16305, subd. (a); *Zemelman v. Boston Ins. Co.* (1970) 4 Cal.App.3d 15, 18 [84 Cal.Rptr. 206].)

## IV. DISPOSITION

The judgment is affirmed. Plaintiff, Theresa Oceguera, is awarded her costs on appeal from defendants, L. A.'s Best Home Improvement, Dave Cohen and Yossi Grimberg.

Armstrong, J., and Kriegler, J., concurred.