Filed 3/19/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SAN FRANCISCO CDC LLC,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>WEBCOR CONSTRUCTION L.P. et al.,<br><br>    Defendants and Respondents. | A156669 & A157650<br><br>(San Francisco County Super. Ct. No. CGC-17-559707) |

Business and Professions Code section 7031, a provision of the Contractors' State License Law (Bus. & Prof. Code, § 7000 et seq.), deters unlicensed building contractors by allowing any person who utilizes their services to bring an action for disgorgement of all compensation paid for the performance of any act or contract, even when the work performed is free of defects. (Bus. & Prof. Code, § 7031, subd. (b), hereafter section 7031(b)). Appellant San Francisco CDC LLC filed an action asserting a section 7031(b) claim for disgorgement against respondents Webcor Construction, L.P. and Obayashi Corporation (Obayashi) in June 2017, more than eight years after respondents completed construction of appellant's InterContinental Hotel (Hotel) in San Francisco in February 2009. The trial court granted respondents' demurrers to appellant's third amended complaint without leave to amend, finding appellant's claims were barred under Code of Civil

1

Procedure section 340, subdivision (a),[1] the one-year statute of limitations for statutory forfeiture or penalty causes of action.

Appellant contends the trial court erred by applying the one-year limitations period and by misapplying the discovery rule and the doctrines of equitable and judicial estoppel. We disagree. As our colleagues in the Second District Court of Appeal recently held in *Eisenberg Village etc. v. Suffolk Construction Co., Inc.* (2020) 53 Cal.App.5th 1201 (*Eisenberg*), the one-year statute of limitations applies to disgorgement claims brought under section 7031, and the discovery rule and other equitable doctrines do not. Even if such doctrines applied to statutory disgorgement claims, we would find them inapt under the circumstances presented here by appellant's own pleadings and judicially noticed matter properly relied upon by the trial court.

Appellant also challenges the trial court's award of $231,834 in contractual attorney fees to respondents, contending the court erred in its interpretation of the attorney fee provision. We disagree and conclude that the agreement contemplated the recovery of attorney fees for noncontractual causes of action that are initiated because of an alleged breach of the parties' contract. We affirm the judgement.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Background

In September 2005, appellant, the owner of the InterContinental Hotel (Hotel) in San Francisco, entered into a construction contract (Contract) with Webcor Construction, Inc., dba Webcor Builders, under which the latter would serve as the general contractor for the Hotel. Webcor Construction,

---

[1] Except for section 7031(b), all undesignated statutory references are to the Code of Civil Procedure.

2

Inc. attested that it was duly licensed as a general contractor and would remain licensed through the duration of the Hotel's construction.

In July 2007, Webcor Construction, Inc. merged into respondent Webcor Construction, L.P. The new entity, Webcor Construction, L.P., obtained a license prior to the merger on June 26, 2007, while Webcor Construction Inc.'s license was allowed to expire in December 2007. Webcor Construction, L.P. was acquired by Obayashi Corporation in 2007.[2]

In February 2009, appellant accepted respondents' work on the Hotel "as complete" and made its final payment. A Notice of Completion was recorded in which appellant's representative verified that Webcor Construction, L.P., dba Webcor Builders, was the "original contractor" for the Hotel project. Appellant paid respondents approximately $144 million for the construction of the Hotel.

## B. Construction Defect Litigation

In 2013, appellant discovered defects with some of the windows in the Hotel and demanded that respondents remedy the defects pursuant to their warranty obligations under the Contract. The parties entered into a tolling agreement the following year, tolling the running of the limitations period on appellant's potential defect claims, effective from the discovery of the defects on October 4, 2013.

In June 2015, appellant filed a lawsuit against "Webcor Builders, Inc." and other defendants, asserting various claims over the defective windows (Defect Action). According to appellant's complaint, respondents failed to perform their warranty obligations and repair work. It was later determined

---

[2] Appellant acknowledges that its claims against Obayashi are wholly derivative of its allegations against Webcor Construction, Inc. and Webcor Construction, L.P.

3

that Webcor Builders, Inc. is a separate entity that is not affiliated with respondents.

In March 2017, the parties stipulated to the substitution of respondent Webcor Construction, L.P. into the Defect Action in lieu of Webcor Builders, Inc. Suspecting that respondents might have constructed the Hotel while unlicensed, appellant attempted to insert the licensure issue into the trial of the Defect Action. The trial court refused to hear the claim. The parties later settled, and the Defect Action was dismissed in August 2017.

## C. The Underlying Action

### i. Complaint

In June 2017, appellant filed a complaint alleging a single claim for disgorgement under section 7031(b) against Webcor Builders L.P., Webcor Construction, Inc., dba Webcor Builders, and Obayashi Corporation. Appellant alleged that respondents built the Hotel while unlicensed because Webcor Construction, Inc.'s license (No. 817988) had expired in December 2007, after its merger into Webcor Construction, L.P., "and license number 817988 was never transferred." Respondents demurred and moved to strike. In their pleadings, respondents requested judicial notice of state licensing records showing that Webcor Construction, L.P. was issued its own contractor's license in June 2007, prior to the merger.

### ii. First Amended Complaint

Rather than respond to the demurrer, appellant filed a first amended complaint (FAC), which again alleged a statutory claim for disgorgement and added claims for conversion and fraudulent concealment. The causes of action rested on allegations that respondents were not properly licensed during the Hotel's construction and had "executed a series of mergers to conceal their licensing violations." Appellant also alleged that it "had no

4

reasonable basis to know or discover that the contracting party was unlicensed" until Webcor Construction, L.P. was substituted into the Defect Action in March 2017. Respondents again demurred and moved to strike on multiple grounds, including that appellant's claims were barred by the one-year statute of limitations under section 340, subdivision (a).[3]

In January 2018, the trial court sustained the demurrer with leave to amend. The court found that all three of appellant's claims related to disgorgement and that the one-year limitations period for statutory penalty or forfeiture claims applied. (§ 340, subd. (a)). Relying on appellant's own allegations that the Hotel was completed in February 2009, and a judicially noticeable declaration by appellant's employee (filed in the Defect Action) that final payment on the Contract was made to Webcor Construction, L.P. in February 2009, the trial court found that appellant's claims had accrued at that time. The court thus held that appellant's claims were time-barred as of March 2010. Even if the four-year catch-all limitations period applied (see § 343), appellant's claims would still have been untimely after March 2013. The court also found that appellant had constructive notice of respondents' licensing status at the time it made final payment because that information was publicly available.

The trial court rejected appellant's arguments that the statute of limitations should be tolled by the parties' 2014 tolling agreement and by the pendency of the Defect Action, reasoning that both events had occurred long after all potentially applicable statutes of limitation had run. Appellant was given leave to amend if it could allege either that respondents had performed

---

[3] Section 340, subdivision (a), provides for a one-year statute of limitations for "[a]n action upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation."

5

unlicensed work within one year of the filing of the complaint, or if "there was a misrepresentation or concealment with regard to licensing violations that could not be verified through public records."

### iii. Second Amended Complaint

In May 2018, appellant filed its second amended complaint (SAC), realleging the same three causes of action. The SAC alleged that appellant had entered into a construction contract with an unidentified "Contractor" and that all payments had been made to "Webcor Builders." It further alleged that "Webcor Builders, Inc." filed an answer in the Defect Action, and that appellant did not learn until March 2017 that Webcor Construction, L.P. was the actual general contractor of the Hotel. The SAC further asserted that Webcor Construction, L.P.'s license had been "automatically terminated during construction when the general partner of Webcor Construction, [L.P.] disassociated from the partnership." The SAC also asserted that "[a]fter June 23, 2016, and through the beginning of 2017, the Contractor, … performed work related to the Hotel's windows for which a contractor's license was required." Respondents again demurred and moved to strike.

The trial court sustained the demurrers, ruling that appellant had not adequately alleged either of the two circumstances for which it was granted leave to amend. As to allegations of unlicensed work performed in 2016 and 2017, the court noted that the SAC did not identify the "Contractor" who allegedly did the work and did not allege that the Contractor lacked the required license. It further found that the SAC did not adequately allege any " 'misrepresentation or concealment with regard to the licensing violations that could not be verified through public records,' " rejecting appellant's contention that Webcor Construction, L.P.'s license had been "automatically terminated" by the general partner's disassociation. The court granted leave

6

to amend, directing appellant to provide more detail as to the work it claimed had been performed in 2016 and 2017. The court also required appellant to allege, if it could do so in good faith, "that during the course of construction in or prior to February 2009, [] one or more of the [respondents] represented themselves to be 'Webcor Builders, Inc.', " rather than having used the words or trade name "Webcor Builders."

### iv. Third Amended Complaint

In October 2018, appellant filed its third amended complaint (TAC). Appellant alleged that on several occasions, "Webcor Builders, Inc." had been identified as the Hotel's general contractor in documents such as change orders and permits prepared by subcontractors, and in other documents that appellant had been copied on. Appellant also alleged that between October 2016 and January 2017, respondents' representative had prepared "scopes, schedules, and sequence of work and obtain[ed] and present[ed] proposals and bids . . . to perform the original contract scope of work with trade contractors who would repair and improve the windows and curtain wall components."

In its demurrer to the TAC, respondents argued that appellant's alleged belief that Webcor Builders, Inc. had built the Hotel was undermined by the publicly recorded February 2009 Notice of Completion signed by appellant's representative which identified the original contractor as "Webcor Construction L.P., dba Webcor Builders." Respondents also asserted that the activities it allegedly performed in 2016 and 2017 were not actionable under section 7031(b) because preparing bids for repair did not require a license.

The trial court sustained the demurrers without leave to amend, finding that appellant was unable to allege a claim that was not time-barred. Although appellant argued that respondents made misleading statements in

pleadings filed in the Defect Action, the court held appellant could not rely on those statements to support an equitable estoppel theory because all applicable statutes of limitation had run before the Defect Action was filed. The court also found that documents prepared and provided by third-party subcontractors and others referring to "Webcor Builders, Inc." could not provide a basis for equitable estoppel because the alleged misrepresentations were not made by respondents themselves. More importantly, the judicially noticeable February 2009 Notice of Completion alone defeated appellant's claim that it did not become aware of the identity of the general contractor until 2017. Finally, the TAC did not adequately allege that respondents performed unlicensed work in the year before the action was filed because the alleged work was limited to preparing "proposals and bids," an activity for which a license is not required. On January 16, 2019, the trial court entered a judgment of dismissal. Appellant filed a notice of appeal.

### v. *Attorney Fee Award*

In February 2019, respondents filed a motion seeking $231,834 in attorney fees. In March 2019, the trial court granted respondents' motion for attorney fees, awarding respondents $231,834 in attorney fees based on the attorney fee provision in the Contract. Appellant appealed the fee order.[4]

## II. DISCUSSION

### A. Standard of Review

The standard of review governing an order sustaining a demurrer without leave to amend is long-settled. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).) " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or

---

[4] The appeals of the two orders were filed separately and have been consolidated for purposes of decision.

8

law.  [Citation.]  We also consider matters which may be judicially noticed.'  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action." (*Ibid*.)  We " 'determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense.' " (*McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1172-1173.)

"[W]hen [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank, supra,* 39 Cal.3d at p. 318.)

## B.  Section 7031(b)

As the trial court observed, appellant's causes of action are all based on its asserted right to disgorgement of compensation from an unlicensed contractor under section 7031(b), and appellant does not contend otherwise.  The statutory purpose behind section 7031 is "to discourage persons who have failed to comply with the licensing law from offering or providing their unlicensed services for pay." (*Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 995.)  This deterrent is achieved under subdivisions (a) and (b) of section 7031.  Subdivision (a) provides that no person "engaged in the business or acting in the capacity of a contractor" may bring an action for compensation for work requiring a contractor's license if the person was not properly licensed at all times during the performance of the work.

9

Under subdivision (b), "a person who utilizes the services of an unlicensed contractor may bring an action . . . to recover all compensation paid to the unlicensed contractor for performance of any act or contract" and this provision generally requires an unlicensed contractor to disgorge all the moneys paid to it by a project owner. Disgorgement is permitted even when the project owner knows that the contractor is unlicensed, the contractor is only unlicensed for part of the time it performed work requiring a license, or when the work performed by the unlicensed contractor is free of defects. (*Judicial Council of California v. Jacobs Facilities, Inc.* (2015) 239 Cal.App.4th 882, 895, 897 (*Judicial Council*).)

Section 7031 has been characterized as "truly a strict liability statute." (*Judicial Council, supra*, 239 Cal.App.4th at p. 897.) "Because it denies all compensation for a contractor's work, regardless of the quality of the work or the reasons for the failure of licensure, section 7031 can have harsh and seemingly unfair effects." (*Id.* at p. 895; see also *Eisenberg, supra,* 53 Cal.App.5th at p. 1207 [" ' " '[S]ection 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business outweighs any harshness between the parties, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation [or requiring them to disgorge compensation already paid' " ' "], quoting *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 423 (*MW Erectors*), italics omitted.)

## C. Appellant's Claims Are Time Barred

### i. *One-Year Statute of Limitations Applies to Section 7031(b) Disgorgement Claims*

Appellant first asserts that claims brought under section 7031(b) are categorically exempt from *all* statutes of limitation. In supplemental

briefing, appellant argues that a claim for disgorgement is restitutionary in nature, subject to the three-year statute of limitations provided by section 338, subdivision (a) for an " 'action upon a liability created by statute, other than a penalty or forfeiture.' " Neither assertion is correct. The trial court correctly determined that the one-year statute of limitations under section 340, subdivision (a), governs actions brought under section 7031(b) because disgorgement is a statutory penalty for work performed by an unlicensed contractor. The court's ruling is consistent with the recent opinion from the Second District Court of Appeal in *Eisenberg, supra*, 53 Cal.App.5th 1201.

In *Eisenberg,* the plaintiff contracted in 2007 with a construction company to build a 108-unit assisted living facility. (53 Cal.App.5th 1201, 1203-1204.) After completing its work in 2010, numerous defects arose that required the contractor to undertake extensive repairs. The contractor worked on repairs until around 2014. When repair efforts eventually stalled, the plaintiff began investigating claims against the contractor. (*Id.* at pp. 1204-1205.)

Section 7068 of the Business and Professions Code requires that each corporate license holder have a qualifying individual (a responsible managing officer or employee with construction experience) actively supervising the contractor's work. (Bus. & Prof. Code § 7068, subds. (b)(3) & (c).) In early 2015, the *Eisenberg* plaintiff learned that the contractor's qualifier had moved out of state in 2008 and was no longer exercising direct supervision over the construction project. In May 2015, the plaintiff filed a section 7031(b) claim seeking disgorgement for all amounts paid to the contractor. The plaintiff argued that, without an active supervisor, the contractor did not have a valid contractor's license when it performed work on the project. (*Eisenberg, supra,* 53 Cal.App.5th at pp. 1207-1208.) The trial court

11

sustained the contractor's motion for summary judgment on the basis that the disgorgement claim was barred by the one-year limitations period of section 340, subdivision (a). (*Id.* at pp. 1208-1209.)

On appeal, the *Eisenberg* plaintiff argued that the applicable limitations period was the "catch-all" four-year statute of limitations. (§ 343). Alternatively, the plaintiff likened disgorgement to a refund or restitution for which the three-year statute of limitations should apply. (§ 338.) Finally, even if the one-year statute applied, the plaintiff argued that its claim did not accrue until 2014 when it first became aware that the contractor's representative had moved out of state. (*Eisenberg, supra,* 53 Cal.App.5th at pp. 1209-1210.)

The appellate court affirmed the trial court's decision, holding that disgorgement claims against unlicensed contractors must be made within one year of completion of the work, regardless of when the owner became aware of the lapse in license. (*Eisenberg, supra,* 53 Cal.App.5th at pp. 1212-1215.) The court explained that because disgorgement is a liability created by statute, the catch-all limitations provision did not apply. (*Id.* at p. 1211.) Next, the appellate court concluded that disgorgement is a penalty, and is not restitution, because the project owner need not suffer any injury in order to seek the remedy. (*Id.* at 1212.)

The *Eisenberg* court relied on the Supreme Court's opinion in *Clark v. Superior Court* (2010) 50 Cal.4th 605, which explained the distinction between a penalty and restitution. "Restitution is not a punitive remedy. The word 'restitution' means the return of money or other property obtained through an improper means to the person from whom the property was taken. [Citations.] 'The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest.'

12

[Citation.]" (*Id.* at p. 614.) On the other hand, "a penalty is a recovery ' "without reference to the actual damage sustained. . . ". ' [Citation.]" (*Ibid.*) Disgorgement is not intended to "restore the status quo" but rather to penalize the contractor by depriving him or her "of any compensation for labor and materials used in the construction while allowing the plaintiff to retain the benefits of that construction." (*Eisenberg, supra,* at p.1212.)

The *Eisenberg* court also rejected the plaintiff's assertion that the statute of limitations should be tolled by the plaintiff's belated discovery that the contractor's representative had moved out of state. The discovery rule provides that a statute of limitations does not begin to run until "the plaintiff suspects or should suspect that her injury was caused by wrongdoing." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110.) In declining to apply the discovery rule to a statutory disgorgement claim, the appellate court explained: "In light of the equitable basis for the discovery rule, it makes little sense to apply the rule to claims for disgorgement under section 7031(b). A section 7031(b) claim does not require that the plaintiff suffer any injury, or at least an injury in the sense used by the courts to justify an equitable exception to the ordinary rules of accrual. The fact that a contractor does not have a valid license does not, by itself, cause the plaintiff harm (other than, perhaps, some sort of psychic harm in knowing that he or she hired someone who was not in compliance with the law)." (*Eisenberg, supra,* 53 Cal.App.5th at p. 1213.) The court continued: "Moreover, the disgorgement mandated by section 7031(b) is not designed to compensate the plaintiff for any harm, but instead is intended to punish the unlicensed contractor. Thus, holding that the discovery rule does not apply to section 7031(b) claims does not produce a harsh result for plaintiffs." (*Ibid.*)

The court also noted that application of the delayed discovery rule to section 7031(b) claims would result in "absurd" outcomes. Since no injury is required to bring a section 7031(b) claim, a plaintiff could 'discover' a licensing violation ten years later and file suit. (*Id.* at p. 1214.) "If the plaintiff has no duty to investigate whether the contractor was properly licensed absent some sort of facts that would put him or her on notice, there would be, in effect, no time limitation at all in most cases." (*Ibid.*)

We agree with the *Eisenberg* court's reasoning and conclude that the disgorgement remedy is a penalty provision subject to the one-year statute of limitations under section 340, subdivision (a). Other courts have similarly characterized the disgorgement provision of section 7031(b) as a "harsh" or punitive statutory remedy meant to dissuade unlicensed work. (See *Judicial Council, supra*, 239 Cal.App.4th at p. 895 [disgorgement operates as a "forfeiture" because it deprives an unlicensed contractor of all compensation, "regardless of the quality of the work or the reasons for the failure of licensure"]; *MW Erectors, supra*, 36 Cal.4th at p. 426 ["the Legislature's obvious intent [in enacting section 7031 was] to impose a stiff all-or-nothing *penalty* for unlicensed work"], italics added.)

We further agree that such claims accrue upon the completion or cessation of the performance of the act or contract at issue and are not subject to tolling under the delayed discovery rule. (*Eisenberg, supra*, 53 Cal.App.5th at p. 1214-1215.)

Here, appellant's own pleadings alleged that it accepted the Hotel project as complete and made final payment on the Contract in February 2009. Appellant also prepared and publicly recorded a Notice of Completion for the project that same month, which was signed by appellant's

14

representative under penalty of perjury.[5]  Accordingly, appellant's disgorgement claims accrued in February 2009 upon the completion and final payment for the Hotel, and appellant was required to have brought this action no later than March 2010 under section 340, subdivision (a).

### ii. Delayed Discovery and Equitable Estoppel Claims

Appellant contends that, regardless of which statute of limitations applies, the accrual date should have been tolled by appellant's late discovery of the true identity of the general contractor in March 2017, and the limitations period should have been equitably tolled by the parties' 2014 tolling agreement and by the pendency of the Defect Action.  Appellant also argues that public records did not disclose in 2007 that Webcor Construction, L.P.'s license had been automatically canceled by operation of law, and these questions of fact cannot be resolved on demurrer.

For the reasons discussed above, the discovery rule has no application to appellant's claims.  These claims accrued when the Hotel project was completed and final payment was made in February 2009—uncontroverted matters established by appellant's own allegations and judicially noticeable materials.  But even if the doctrines of equitable estoppel or delayed discovery applied to section 7031(b) claims, we would conclude that appellant's claims still accrued in February 2009.  Appellant alleges that it

---

[5] The trial court took judicial notice of the recorded Notice of Completion.  Judicial notice may be taken of the existence and facial contents of recorded real property records where, as here, the authenticity of the document is not challenged. (Evid. Code §§ 452, subds. (c) and (h), 453; *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924, fn 1, 925.)  This court is required to take judicial notice of matters properly noticed by the trial court.  (Evid. Code § 459.)  Therefore, we take judicial notice that the recorded Notice of Completion, signed by appellant's representative in February 2009, verifies that the "original contractor" for the Hotel project was "Webcor Construction, L.P., dba Webcor Builders".

15

did not become aware of respondents' licensure violation until March 2017 when respondents disclosed that "Webcor Construction L.P." actually built the Hotel, and this disclosure caused appellant to scrutinize the subcontracts and investigate the licensing issues. Yet the Notice of Completion confirmed appellant's understanding that "Webcor Construction L.P." was the "original contractor" on the project. Under appellant's own theory, this understanding should have alerted appellant to the possibility of a licensing violation as late as February 2009. Because a contractor's license is a matter of public record (see *Eisenberg*, *supra*, 53 Cal.App.5th at p. 1208, fn 7), appellant was armed with all the information it required to bring its disgorgement action within the applicable one-year period. Finally, neither the parties' tolling agreement in 2014 nor the Defect Action filed in 2015 extended the limitations period because both of these events occurred long after the statute of limitations had expired in March 2010.[6]

Appellant also argues that Webcor Construction, L.P.'s license was automatically cancelled in October 2007 when its general partner, Webcor GP

---

[6] At oral argument, counsel for appellant asserted for the first time that under *Eisenberg*, the appellate court held that a disgorgement cause of action "is complete when an unlicensed contractor completes or ceases performance of the act *or contract at issue*." (*Eisenberg, supra*, 53 Cal.App.5th at p. 1214-1215, italics added.) Counsel explained that this means the disgorgement claim should not accrue until the end of the 10-year warranty period when the builder's contractual obligations ceased. Because appellant did not raise this assertion in its appellate briefing, the argument is forfeited. (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 232, fn. 6 ["We need not consider points raised for the first time at oral argument."].) Even so, we note that *Eisenberg* involved a post-project warranty period as well, and yet the appellate court found that the disgorgement claim had accrued when the last payment was made at the completion of the project's construction. (*Id.* at p. 1215.) Appellant's interpretation of *Eisenberg* seems to depart from the appellate court's own application of its holding.

LLC, "disassociated" and a new general partner, Webcor Construction GP, L.P. was substituted in. Appellant contends that notice of this disassociation was hidden from the California State Licensing Board (CSLB) until April 2018. Respondents counter that appellant's cancellation claim rests on a fundamental misreading of the licensing laws, particularly Business and Professions Code section 7076, subdivision (c), as well as the appellate court's opinion in *Oceguera v. Cohen* (2009) 172 Cal.App.4th 783 (*Oceguera*). Respondents have the better argument.

Business and Professions Code section 7076, subdivision (c) provides in relevant part: "A partnership license shall be canceled upon the disassociation of a general partner or upon the dissolution of the partnership. The disassociating partner or the remaining partner or partners shall notify the registrar in writing within 90 days of the disassociation of a general partner or dissolution of the partnership. *Failure to notify* the registrar of the disassociation or dissolution within 90 days shall cause the license to be canceled *effective the date the written notification is received at the board's headquarters office. . . .*" (Italics added.) The plain language of the statute reflects that license cancellation is not automatic under the circumstances presented here. If notice of the general partner disassociation is not submitted within 90 days, a contractor's license is cancelled effective from the date the CSLB *receives* written notification of the disassociation. There is no dispute that the CSLB received notification of the partnership substitution in the spring of 2018, and thus Webcor's Construction L.P.'s license could not have been cancelled under a plain reading of the statute prior to 2018.

*Oceguera, supra,* is distinguishable. In *Oceguera,* the general partner of a construction company formally disassociated from the partnership in May 2003, executing a disassociation notice pursuant to section 7076,

17

subdivision (c).  (*Id.* at pp. 787.)  In June 2003, the partnership entered into a construction contract and performed work on that contract.  (*Ibid.*)  The CSLB received notice of the disassociation the following month.  (*Id.* at p. 788.)  The project owner later sued for disgorgement under section 7031(b).  The partnership argued unsuccessfully that it had substantially complied with its licensing obligations because it had a valid license when it entered into the contract.  The appellate court disagreed, concluding that the effective date of the license cancellation was in May 2003, when the general partner formally disassociated, because the CSLB had received notice of this disassociation within the 90-day period set forth in Business & Professions Code section 7076, subdivision (c).  (*Id.* at pp. 788, 793.)

Here, appellant concedes that the CSLB did not receive notice of the general partner's disassociation within the 90-day period that guided *Oceguera*'s resolution of its appeal.  Rather, the CSLB cancelled Webcor Construction, L.P.'s license in April 2018 after Webcor informed the board of its former general partner's disassociation.  While appellant argues that it makes no sense to interpret Business and Professions Code section 7076, subdivision (c) in such a way as to allow a party to remain licensed long after a disassociation has occurred, appellant's arguments are based on public policy concerns and not the plain language of the statute as written.  We are sympathetic to the points raised, but such arguments are better addressed to the Legislature.

### iii.  *Allegations of Unlicensed Work*

As a final matter, appellant argues that it adequately alleged that respondents performed unlicensed work in 2016 and 2017 by "preparing scopes, schedules, and sequence of work and obtaining and presenting proposals and bids" for work to repair the defective windows.  Appellant

18

asserts that "the preparation of bids to perform" these construction activities "require[s] a contractor's license." Appellant is mistaken.

Appellant's arguments run counter to the Supreme Court's observation in *MW Erectors*, *supra*, that the preparation of bids and proposals is pre-contractual activity for which a contractor's license is not needed. (36 Cal.4th. at pp. 435-440.) Appellant has never alleged that respondents undertook to perform any of the work described in the proposals and bids prepared in 2016 and 2017. Indeed, appellant affirmatively alleged in the FAC that Webcor Construction, L.P. "never successfully performed its warranty obligations or repair work." Its allegation of unlicensed work is therefore insufficient as a matter of law to overcome respondents' demurrer.

In sum, appellant's claims accrued in February 2009 when the Hotel was completed and final payment was made to respondent Webcor Construction, L.P. Appellant had until March 2010 to bring its statutory disgorgement claims under section 340, subdivision (a). Because appellant did not bring this action until 2017, the trial court properly sustained the demurrer without leave to amend.[7]

## D. Attorney Fee Appeal

### i. Additional Background

As discussed above, appellant entered into a construction agreement in September 2005 with respondent Webcor Construction, Inc., dba Webcor Builders, under which the latter would serve as the general contractor on the Hotel on the construction project. Webcor Construction, Inc. attested that it was duly licensed as a general contractor and would remain licensed through

---

[7] Appellant does not assert that the TAC's defects can be cured by further amendment. In light of our conclusions, we need not address the parties' remaining arguments on appeal. Appellant's November 4, 2019 request for judicial notice is accordingly denied.

the duration of the Hotel's construction.  Webcor Construction, Inc. later merged into respondent Webcor Construction, L.P.

Section 14.6.4 of the Contract provided that attorney fees are recoverable in two circumstances: "If either party commences an action against the other *to enforce any of the terms* of the Contract Documents *or because of the breach* by either party of any of the terms of the Contract Documents, the losing or defaulting party shall pay to the prevailing party the actual costs and expenses incurred in connection with the prosecution or defense of such action."  (Italics added.)

Following the dismissal of appellant's action, Webcor Construction, L.P. filed a motion for attorney fees pursuant to Civil Code section 1717 and the contractual attorney fees provision.[8]  Noting that appellant's complaints had repeatedly invoked Section 13.11's requirement for the contractor to "obtain and maintain in full force and effect . . .  such professional or business licenses, certificates, or other professional, governmental or other approvals or permits necessary to perform Work," respondent argued that appellant brought this action "because of a perceived breach of the Contract terms . . . ." Appellant opposed the motion, asserting that its action against respondents was not filed "because of a breach" of the Contract, but rather to enforce section 7031(b)'s disgorgement remedy.

The trial court granted respondents' motion for attorney fees, observing that "the construction contract required Webcor to maintain a contractor's

---

[8] "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."  (Civ. Code, § 1717, subd. (a).)

20

license when it performed work under that contract," citing to section 13.11. It explained that "[a]t the heart" of appellant's action against respondents "was that Webcor had allegedly breached that contractual obligation," noting that appellant "repeatedly admitted in briefing before this Court that its causes of action against Webcor arose out of Webcor's purported 'contractual obligations.'" As such, the court found the action "was commenced 'because of' Webcor's alleged breach of the construction contract."

### ii. Standard of Review

" ' "On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." ' [Citations.] In other words, 'it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo.' [Citations.]" (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*).) Thus, when the facts are not in dispute and the right to the recovery of fees depends upon the interpretation of a contract and no extrinsic evidence is offered to interpret the contract, we review the ruling de novo. (*Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 705.)

### iii. Meaning of the Attorney Fee Provision

Appellant asserts that the attorney fee provision categorically excludes noncontract claims, arguing that even under the second clause of Section 14.6.4, "fees are available only when either party commences an action *for* [a] *breach of contract*." Appellant contends that a contrary interpretation would

21

"effectively expand an award of fees to all actions arising out of or related to the Contract, i.e., because of the existence of the contractual relationship." (Italics omitted.) We are not persuaded.

" 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation. [Citation.] Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning. [Citations.]' " (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 608 (*Santisas*).)

Appellant's reading of the attorney fee provision is unduly narrow and would effectively subsume the second clause ("because of the breach") into the first clause ("to enforce any of the terms of the Contract"). If appellant were correct that the second clause refers only to the filing of a lawsuit to recover for a breach of contract, then the preceding clause "to enforce any of the terms of the Contract" would be unnecessarily duplicative. (See *Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 503 [general rules of contract interpretation "disfavor constructions of contractual provisions that would render other provisions surplusage"].) We must give effect to *both* attorney fee clauses.

We begin with common points of agreement between the parties. Both sides agree that the first attorney fee clause refers to actions for breach of contract, and neither party contends on appeal that an action for statutory

disgorgement was an action to enforce the terms of the Contract.[9]  Both parties also agree that the phrase "because of" denotes a causal relationship between an alleged breach of contract and the filing of the action.  Where the parties differ is on the meaning of this causal link.  Appellant claims that the trial court construed the "because of" clause to mean "arising out of" the contractual relationship, thus converting the provision into something it is not.

It is true that contractual fee provisions may broadly permit recovery of attorney fees for actions "arising out of" the contractual relationship.  (See *Santisas, supra,* 17 Cal.4th at p. 608; [holding contract provision allowing recovery of attorney fees for actions "arising out of" agreement "embraces all claims, both tort and breach of contract, in plaintiffs' complaint, because all are claims 'arising out of the execution of th[e] agreement or the sale.' "] *Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1340, 1344 [fee provision stating "[i]f this [a]greement *gives rise to* a lawsuit" must be understood "in a far more general, transactional sense than is suggested by phrases such as 'derives from' or 'proximately caused by' " and "encompass[es] acts and omissions occurring in connection with the [agreement]"].)

But appellant presents a false binary choice in its reading of Section 14.6.4.  An action may be brought "because of" a breach of contract without

---

[9] We agree.  As discussed above, a claim under section 7031(b) does not require a contractual relationship or proof of any injury to seek disgorgement from a nonlicensed contractor.  Contractors performing work must be licensed unless exempt (Bus. & Prof. Code §§ 7026, 7040; *White v. Cridlebaugh* (2009) 178 Cal.App.4th 506, 517), whether or not a contract replicates this legal obligation.  And a breach of contract for failure to maintain a license through the duration of the project would rarely (if ever) give rise to a *contractual* remedy for disgorgement of all compensation paid to the builder.

23

being an action *for* breach of contract and without being an action merely *arising out of* the contractual relationship. The "because of" clause in Section 14.6.4 suggests a middle path, limiting the recovery of attorney fees to certain lawsuits whose commencement may be attributed to an earlier breach of contract. This clause necessarily encompasses noncontractual, i.e, tort and statutory, causes of action that are commenced "because of" an alleged breach of the Contract's terms."

Our high court has observed that the phrase "because of" in attorney fee clauses can imply various "degree[s] of causation," including "but-for" cause, "substantial factor," and "motivating factor." (*Mountain Air, supra,*3 Cal.5th at p. 758; see also *Gross v. FBL Financial Services, Inc.* (2009) 557 U.S. 167, 176 [dictionary definition of "because of" means " 'by reason of: on account of' "].) *Mountain Air* also instructs that courts should not apply an overly formalistic approach to determining whether a prevailing party is entitled to contractual attorney fees. (*Id.* at p. 760.)

Section 14.6.4 does not specify which degree of causation the parties intended to apply in using the phrase "because of." In the absence of any limiting qualifier such as "solely" or "exclusively because of," we conclude that Section 14.6.4 permits the recovery of attorney fees so long as the alleged breach was *a cause* of the action, that is, the commencement of the action was motivated at least in part by the alleged breach of contract. (Compare *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 216-217, 232 [concluding "because of" phrase in employment discrimination statute required proof that illegitimate criterion was a "substantial motivating factor" and not the "but-for" cause of employment action].) Thus, an action need not be solely or predominantly based on a breach of contract to fall within Section 14.6.4 of the Contract.

### iv. *Attorney Fees Were Properly Awarded*

Appellant argues that Webcor Construction, L.P. is not entitled to attorney fees because the underlying action was brought to vindicate a statutory right to disgorgement, and not because of a breach of the Contract. Appellant adds that its references to respondents' breach of contract in the pleadings were merely contextual. We disagree.

As the trial court observed, appellant's pleadings repeatedly invoked respondents' alleged breach of their contractual obligations. In all four versions of its complaint, appellant included the allegation that respondents had violated Section 13.11 of the Contract by misrepresenting Webcor Construction, L.P.'s licensing status. Further, in responding to an argument in respondents' demurrer to the FAC, appellant argued that its "cause of action [for disgorgement] arises out of a contractual obligation."

The trial court essentially determined that appellant should be held to its own allegations and arguments, which repeatedly relied on the assertion that Webcor Construction, L.P. violated its contractual duty to be licensed at all times and concealed this violation from appellant as the basis for claiming its entitlement to disgorgement under section 7031(b). We cannot fault the trial court for doing so. While appellant may have brought this action to assert a statutory claim for disgorgement, the record amply supports the trial court's conclusion that appellant's lawsuit was *also* motivated in part by the asserted breach of contract. Accordingly, this action was commenced "because of" respondents' alleged breach of the construction agreement, and under the contractual fee provision, respondents are entitled to their fees.

## III.  DISPOSITION

The judgment is affirmed. Respondents are entitled to their costs on appeal.

_____
SANCHEZ, J.

We concur.

_____
HUMES, P.J.

_____
MARGULIES, J.

(A157650 & A156669)

26

San Francisco County Superior Court

The Honorable Ethan P. Schulman and The Honorable Harold E. Kahn

Counsel:

Hennigh Law, Scott E. Hennigh, Mathew R. Troughton, Garrett M. Mott; Hanson Bridgett, Gary A. Watt, Donnelly Gillen, David Casarrubias, Ashley Marshall; Horovitz & Levy, Lisa Perrochet, Christopher Hu, Bradley S. Pauley, Justin Volk, Eric S. Boorstin and Millie Cowley for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Matthew N. Ball, William F. Cole, Julian W. Poon, Daniel M. Kolkey; Varela, Lee, Metz & Guarino, Bennett J. Lee, Nicholas A. Merrell and Berit L. Elam for Defendant and Respondent.